## MANOR DEVELOPMENT CORPORATION *v.* CONSERVATION COMMISSION OF THE TOWN OF SIMSBURY

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and N. O'NEILL, Js.

Argued January 17—decision released May 20, 1980

*Monica J. Lafferty,* with whom, on the brief, was *David B. Beizer,* for the appellant (plaintiff).

*Marshall K. Berger, Jr.,* with whom was *William Pease,* for the appellee (defendant).

N. O'NEILL, J. The defendant conservation commission of the town of Simsbury after a public hearing by written decision denied the plaintiff's

application to conduct a regulated activity on a tract of land containing some thirty-three proposed building lots. The commission's authority stems from General Statutes §§ 22a-36 through 22a-45 and the inland wetlands and water courses regulations of the town of Simsbury.

The plaintiff appealed that decision to the Court of Common Pleas. After a hearing the appeal was dismissed. The plaintiff now appeals that dismissal. The appeal was taken prior to July 1, 1978.[1]

The plaintiff's basic claim is that there was an unconstitutional taking of its property without compensation in contravention of the fifth amendment to the United States constitution and article first, § 11 of the Connecticut constitution.

Because of facts outside the original record, but admitted in argument to this court, the question of whether this appeal is moot has arisen. *Gormley* v. *Panuzio,* 166 Conn. 1, 347 A.2d 78 (1974).

On December 30, 1976, the plaintiff applied to the defendant for a permit to conduct a regulated activity on its land in Simsbury. The activity proposed was: to construct 1080 feet more or less of road with sewer, water lines and storm outlets, remove about 3500 cubic yards of top soil and subsoil, deposit about 500 cubic yards of fill, and install some 1200 cubic yards of road construction material. A hearing was held February 22, 1977, and on March 14, 1977, the application was denied.

The denial was based on the following factors:

"1. Seven of the building lots are shown to be totally in wetlands area.

---

[1] Appeal to this court now must be by certification pursuant to General Statutes § 51-197b.

"2. A cul de sac is proposed at one end of a water course, northeasterly portion of the site.

"3. There is extensive crossing of wetlands by Road 'C' in the southeast section. The Commission finds that these proposed uses of inland wetlands to be [sic] unsuitable by reason that they will cause unnecessary expense and produce problems of health and safety to residents of that area. The commission finds evidence for this in adjacent wetland areas which have already been developed and that residents of this adjacent area have supplied abundant testimony as to the problems created by over-development in similar wetlands.

"4. The area is valuable as a natural habitat and development would destroy this.

"5. The area may also serve as a significant aquifer recharge area and a means of sustaining stream flow.

"In addition, from a Conservation viewpoint, the commission finds the proposed project to be inconsistent with the Simsbury Plan of Development. This area is already heavily developed, and this particular area has been designated as proposed recreational open space."

The plaintiff appealed to the Court of Common Pleas on March 25, 1977. On May 22, 1978, the Court of Common Pleas dismissed the appeal. On June 13, 1978, and on July 25, 1978, the plaintiff filed another application for a permit to conduct a regulated activity on the same tract of land. That application was approved by the defendant on September 12, 1978. The net effect of the denial of the first application and the approval of the second is a loss to the plaintiff of some seven lots.

As far as the appeal as a whole is concerned, the case is not moot because practical relief could still be afforded the plaintiff if the case were to be reversed; i.e., the plaintiff would have seven additional lots in its proposed subdivision. *Gormley* v. *Panuzio,* supra, 3. However, the question raised by the plaintiff in regard to being deprived of its property without just and adequate compensation may have become moot.

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944); *United Liquors of Connecticut, Inc.* v. *Teamsters Local 443,* 179 Conn. 211, 212, 425 A.2d 1262 (1979); *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291 (1974).

"Until it appears that the plaintiff has been finally deprived by the commission of the reasonable and proper use of the property, it cannot be said that there has been an unconstitutional taking of property without just compensation." *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 658, 153 A.2d 822 (1959); *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 345, 356, 362 A.2d 948 (1975).

Merely because the total value of the property has decreased does not justify a conclusion that there has been an unconstitutional taking. *Steel Hill Development, Inc.* v. *Town of Sanbornton,* 469 F.2d 956 (1st Cir. 1972). A property may be subject to reasonable restraints without resulting in a

taking. *Lovequist* v. *Conservation Commission of Town of Dennis,* Mass. , 393 N.E.2d 858, 866 (1979); *Turnpike Realty Co.* v. *Dedham,* 362 Mass. 221, 284 N.E.2d 891 (1972), cert. denied, 409 U.S. 1108, 93 S. Ct. 908, 34 L. Ed. 2d 689 (1973).

This case is distinguished from such cases as *Horwitz* v. *Waterford,* 151 Conn. 320, 197 A.2d 636 (1964), where no use could be made of the property as a result of the defendant's action; *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 311, 197 A.2d 770 (1964), where "the change of zone to flood plain district froze the area into a practically unusable state"; and *Bartlett* v. *Zoning Commission,* 161 Conn. 24, 31, 282 A.2d 907 (1971), where the value of the plaintiff's property was reduced from $32,000 to $1000 by the action of the defendant in imposing "extreme restrictions" on the plaintiff's use of his property.

The same is true in other states. *Candlestick Properties, Inc.* v. *San Francisco Bay Conservation & Development Commission,* 11 Cal. App. 3d 557, 89 Cal. Rptr. 897 (1970); *In re Spring Valley Development,* 300 A.2d 736 (Me. 1973); *Just* v. *Marinette County,* 56 Wis. 2d 7, 201 N.W.2d 761 (1972). In the last cited case the court pointed out that the injury to or loss of value of the property was that loss resulting from the application of the law to the property in its natural state; not as applied to the property as the applicant might wish to change it. Id., 23.

As in *Brecciaroli* v. *Commissioner of Environmental Protection,* supra, the record before us discloses only that one specific application for a permit was denied by the defendant. But contrary to *Brecciaroli,* where the court had to presume that the

"plaintiff may still be permitted on subsequent application," id., 357, to use a smaller portion of his land, in the instant case we know that on a subsequent application the plaintiff has been permitted by the defendant to use all of its land except seven lots. The result is that there has been no practical confiscation of and no unconstitutional taking of the plaintiff's land. Id.

Thus, that particular claim is moot. *Reynolds* v. *Vroom,* supra. No practical benefit can follow from a determination of the issue of unlawful taking and therefore, this court will not consider it. *Rollins* v. *Holcomb,* 122 Conn. 664, 190 A. 260 (1937).

A good deal of the plaintiff's appeal is taken up with questions of the credibility and acceptance of expert testimony and the obligation of the defendant in regard to the use of such testimony.

An administrative agency is not required to believe any witness, even an expert. *Feinson* v. *Conservation Commission,* 180 Conn. 421, 427–28, 429 A.2d 910 (1980); *Gulf Oil Corporation* v. *Board of Selectmen,* 144 Conn. 61, 65–66, 127 A.2d 48 (1956); *Jaffe* v. *State Department of Health,* 135 Conn. 339, 64 A.2d 330 (1949). Nor is an agency required to use in any particular fashion any of the materials presented to it as long as the conduct of the hearing is fundamentally fair. *Miklus* v. *Zoning Board of Appeals,* 154 Conn. 399, 225 A.2d 637 (1967). Nothing appears to have made this proceeding unfair.

The plaintiff mentions in its appeal that the so-called Part B of the plaintiff's application was never required to be filed. Section 5.6 of the Simsbury Inland Wetlands and Water Courses Regulations

provides: "If the Commission finds, based on the information before it, that a regulated activity is involved, it must then determine whether the proposal will involve a significant activity. If the activity is determined to be significant, the applicant shall be required to submit such pertinent information as designated on Part B of the application form." That regulation providing for the filing of that Part B is for the defendant's benefit. The defendant has chosen not to require it. Even beyond that, however, the plaintiff surely had an absolute right to file Part B, if as it claims a "significant activity" was involved. The plaintiff was in no way prejudiced by the fact that the defendant did not demand perfect compliance with the Part B rule. Not being prejudiced, the plaintiff cannot complain. *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 316 A.2d 394 (1972).

The defendant did not act illegally, arbitrarily or in abuse of its discretion in denying this application for the reasons that it stated.

The statute requires that the commission in denying an application for a permit for a regulated activity "shall state upon the record the reason for its decision." General Statutes § 22a-42a (d). The requirement is met by the commission's statement of the factors upon which it relied. Of course, those factors must be relevant to withstand a claim that the commission acted arbitrarily.

The reasons stated by the defendant included the commission's conclusion that overdevelopment in wetlands created problems. The commission also found that seven of the lots were "totally in wetlands area." Taken together those two "reasons"

are a sufficient basis to deny the application when the language of the enabling statute is considered. General Statutes § 22a-36.[2]

[2] "[General Statutes] Sec. 22a-36. INLAND WETLANDS AND WATER COURSES. LEGISLATIVE FINDING. The inland wetlands and water courses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed. The wetlands and water courses are an interrelated web of nature essential to an adequate supply of surface and underground water; to hydrological stability and control of flooding and erosion; to the recharging and purification of ground water; and to the existence of many forms of animal, aquatic and plant life. Many inland wetlands and water courses have been destroyed or are in danger of destruction because of unregulated use by reason of the deposition, filling or removal of material, the diversion or obstruction of water flow, the erection of structures and other uses, all of which have despoiled, polluted and eliminated wetlands and water courses. Such unregulated activity has had, and will continue to have, a significant, adverse impact on the environment and ecology of the state of Connecticut and has and will continue to imperil the quality of the environment thus adversely affecting the ecological, scenic, historic and recreational values and benefits of the state for its citizens now and forever more. The preservation and protection of the wetlands and water courses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state. It is therefore, the purpose of sections 22a-36 to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and water courses by minimizing their disturbance and pollution; maintaining and improving water quality in accordance with the highest standards set by federal, state or local authority; preventing damage from erosion, turbidity or siltation; preventing loss of fish and other beneficial aquatic organisms, wildlife and vegetation and the destruction of the natural habitats thereof; deterring and inhibiting the danger of flood and pollution; protecting the quality of wetlands and water courses for their conservation, economic, aesthetic, recreational and other public and private uses and values; and protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn."

The plaintiff sought to operate so as to use a wetland. That is a regulated activity as defined by General Statutes § 22a-38 (13): " 'Regulated activity' means any operation within or use of a wetland or water course involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or water courses, but shall not include the specified activities in section 22a-40." When we turn to General Statutes § 22a-40, we find that lots on an approved subdivision are specifically excluded. However, the lots on this proposed subdivision were never approved and thus are subject to regulation of the commission.

The third reason advanced by the commission, that there is extensive crossing of the wetland by Road "C," is not conclusionary but merely factual. "Reason" is a "general principle, law, or warranted presumption that supports a conclusion, explains a fact, or validates a course of conduct." Webster, Third New International Dictionary. The third reason advanced by the commission is such a reason. Reasons of that nature support the action of the defendant. *Senior* v. *Zoning Commission,* 146 Conn. 531, 534, 153 A.2d 415 (1959), appeal dismissed, 363 U.S. 143, 80 S. Ct. 1083, 4 L. Ed. 2d 1145 (1960).

Finally, the plaintiff complains that the court below erred in considering the fact that the commission had viewed the subject property.

During preparation of the case for trial, the defendant filed an answer which included the "Return." In the defendant's statement of return it said: "The documents described above constitute the full record upon which the defendant acted except the following facts revealed by its views of the premises and the general locality thereof and

its general acquaintance with the area in which said premises are located." That portion of the return was expunged and thus the court should not have considered it. However, what the court below said was: "In addition to considering the evidence offered at the public hearing, members of the Commission viewed the tract involved, as indicated in the record." The record at the time the trial court reviewed it contained the expunged language. The court record at that time did not contain any notice that the language had been expunged.

The court below also found that the commission considered not only the evidence but "its own peculiar knowledge of the area."

Although the statement in the record in regard to the commission's view was expunged that does not mean that the commission did not act upon its own knowledge if properly acquired. *Jaffe* v. *State Department of Health,* supra, 350. In a case such as this with the responsibilities imposed on the commission by statute to consider the environmental impact, the alternatives, the relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity, the irreversible and irretrievable commitments of resources, the character and degree of the injury and the suitability of the area, the commission would of necessity view the property. General Statutes § 22a-41. In light of the totality of the evidence before the commission, its viewing of the premises and its own "peculiar knowledge" the commission could reasonably have arrived at the reasons it recited. *Feinson* v. *Conservation Commission,* supra; *Mrowka* v. *Board of Zoning Appeals,* 134 Conn. 149, 154, 55 A.2d 909 (1947). The conclusions

of the trial court that the commission acted legally, reasonably and in the proper exercise of its discretion in denying the requested permit and that the denial of the plaintiff's application did not constitute a taking, cannot be disturbed.

There is no error.

In this opinion the other judges concurred.