## PATRICK R. GIL *v.* INLAND WETLANDS AND WATERCOURSES AGENCY OF THE TOWN OF GREENWICH ET AL.
### (14144)

PETERS, C. J., SHEA, CALLAHAN, BORDEN and F. X. HENNESSY, Js.

Argued April 30—decision released July 9, 1991

*Eugene F. McLaughlin, Jr.,* assistant town attorney, for the appellant (named defendant).

*James D'Alton Murphy,* for the appellee (plaintiff).

*Richard Blumenthal,* attorney general, and *Joseph Rubin, Janet P. Brooks* and *Kimberly P. Massicotte,* assistant attorneys general, filed a brief for Leslie A. Carothers, commissioner of environmental protection, as amicus curiae.

*Katharine H. Robinson* filed a brief for the Connecticut Fund for the Environment as amicus curiae.

PETERS, C. J. The primary issue in this appeal is the standard to be applied in determining whether an inland wetlands agency's denial of a building permit has effected an unconstitutional taking of an applicant's property. The plaintiff, Patrick R. Gil, is the owner of residentially zoned property subject to wetlands regulations. After the named defendant, the inland wetlands and watercourses agency of the town of Greenwich (agency),[1] denied his fourth application for a building permit because of the perceived adverse impact that the proposed development would have had on the wetlands portion of his property, the plaintiff appealed to the Superior Court. He claimed, inter alia, that the agency's action in denying his fourth application amounted to a taking of his property in violation of the fifth amendment to the constitution of the United States and article first, § 11, of the constitution of Connecticut.[2] The Superior Court sustained the appeal on those grounds. The agency thereupon appealed to the

[1] Although the commissioner of environmental protection was a party at the trial level, she failed to file a timely appeal. She therefore was not a party to this appeal. The commissioner, however, has filed a brief as amicus curiae.

[2] The fifth amendment to the United States constitution provides in relevant part: "[N]or shall private property be taken for public use, without just compensation." Article first, § 11, of the Connecticut constitution similarly provides: "The property of no person shall be taken for public use, without just compensation therefor."

Appellate Court, which affirmed the judgment. *Gil* v. *Inland Wetlands & Watercourses Agency,* 23 Conn. App. 379, 580 A.2d 539 (1990). The agency, on the granting of certification, then appealed to this court.[3] *Gil* v. *Inland Wetlands & Watercourses Agency,* 216 Conn. 829, 582 A.2d 206 (1990). We conclude that the plaintiff has failed to show that the agency will not allow any reasonable residential development of his property and, therefore, that a decision on the merits of his takings claim would be premature. Accordingly, we reverse the judgment of the Appellate Court.

I

As the United States Supreme Court has observed, whether a claim that a particular governmental regulation or action taken thereon has deprived a claimant of his property without just compensation is an "essentially ad hoc factual inquir[y]." *Penn Central Transportation Co.* v. *New York City,* 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1977), reh. denied, 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 198 (1978); see also *Keystone Bituminous Coal Assn.* v. *DeBenedictis,* 480 U.S. 470, 473–74, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987); *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393, 413, 43 S. Ct. 158, 67 L. Ed. 322 (1922). Our review of the plaintiff's takings claim is no less fact-dependent.

The relevant facts are as follows. The property at issue is a nonconforming 3.36 acre lot located in a four acre residential zone in the town of Greenwich. The plaintiff purchased this property for $50,000 by warranty deed in November, 1982. Significantly, the property was classified, at the time of the purchase, not only as a residentially zoned building lot, but also as wet-

---

[3] We granted certification, limited to the following question: "In considering whether the action of an inland wetlands agency denying a building permit amounts to an unconstitutional taking of the applicant's property, what is the proper standard for determining a taking?"

lands subject to the authority of the agency. Ninety to ninety-five percent of the property contains wetlands soil, although the town wetlands map at the time of purchase indicated that only approximately one half of the property was wetlands.[4] Most of the nonwetlands property is inaccessible from the side of the property that is closest to Bedford Road, which provides access to the lot. Although the plaintiff once held a right of first refusal to purchase property owned by an adjoining landowner, the conditions precedent to the exercise of this right have not occurred and the plaintiff has apparently transferred the right.

The plaintiff filed his first application for a building permit shortly after purchasing the property. Through this application, the plaintiff sought to construct a single family residence with a driveway and a septic system. The agency denied this application and an appeal to the Superior Court ensued. On November 3, 1987, the court dismissed the appeal, concluding that the agency's decision was supported by substantial evidence and that the denial of a single permit application did not constitute a taking. An appeal to the Appellate Court was similarly unavailing. *Gil* v. *Inland Wetlands & Watercourses Agency*, 19 Conn. App. 801, 560 A.2d 992 (1989), cert. denied, 212 Conn. 818, 565 A.2d 535 (1989).

In 1984, the plaintiff filed a second application making certain changes from the first one. The agency denied the application as incomplete and did not render a final decision on its merits. Subsequently, in August, 1985, the plaintiff filed his third application for a building permit. This application proposed: (1) to

---

[4] The Appellate Court's opinion incorrectly states that no part of the plaintiff's property had been included on the wetlands map. At oral argument, however, the plaintiff conceded that the map reflected that approximately one half of the property was wetlands.

reduce the wetlands area that the residence would infringe upon; (2) to place fill for a septic system on one corner of the property and surround the system with a curtain drain; (3) to enhance the wetlands area by replanting previously cleared parts of the property; and (4) to set aside one and one-half acres as permanent open space. The application also challenged the agency's determination that the area of the property upon which the plaintiff proposed to build the residence contained wetlands soils. The agency denied this application and the Superior Court dismissed the plaintiff's appeal of that denial on nonconstitutional grounds. The plaintiff filed, but later withdrew, an appeal to the Appellate Court.

On December 24, 1987, the plaintiff submitted his fourth application, which forms the foundation of this appeal. The development plan submitted with this application contemplated a proposed residence with a footprint of 1800 square feet. *Gil* v. *Inland Wetlands & Watercourses Agency,* supra, 23 Conn. App. 382–83. Although the third application had incorporated a residence with a footprint of 2100 square feet, the fourth application nonetheless represented an increase from the 1500 square feet footprint of the plaintiff's initial application. The fourth application also relocated the position of the residence twenty-two feet to the east, away from the wetter portion of the lot. This relocation shortened the length of the driveway in an effort to reduce further the adverse impact on wetlands. The application proposed to create an open area in a previously disturbed part of the lot and to increase the amount of the property that would be set aside as permanent open space.

The agency denied the plaintiff's fourth application on August 22, 1988, finding, inter alia, that it presented no significant changes from earlier applications. Pur-

suant to General Statutes § 22a-43, which governs appeals taken under the Inland Wetlands and Watercourses Act, the plaintiff appealed the denial to the Superior Court, claiming that the action of the agency in denying his application for a building permit amounted to a taking of his property without just compensation, in violation of the state and federal constitutions. In his complaint, the plaintiff specifically alleged that he had purchased the property with the reasonable expectation of developing it as a residential lot, that such a use, as well as all other reasonable uses, had been frustrated by the agency's actions, and, consequently, that the value of the property had been diminished from $280,000 to $0.

The Superior Court tried the plaintiff's takings claim de novo, in accordance with General Statutes § 22a-43a.[5] *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 551, 552 A.2d 796 (1989). The parties having declined an opportunity to supplement the administrative record, the court determined on the basis of that record that the plaintiff had purchased the property with the reasonable expectation of building a single family home thereon. The court then concluded, on two independent grounds, that the agency's refusal of a building permit to the plaintiff amounted to a taking. The court held that the agency's action had left

---

[5] General Statutes § 22a-43a provides: "FINDINGS ON APPEAL. SETTING ASIDE OR MODIFYING ACTION. AUTHORITY TO PURCHASE LAND. (a) If upon appeal pursuant to section 22a-43, the court finds that the action appealed from constitutes the equivalent of a taking without compensation, it shall set aside the action or it may modify the action so that it does not constitute a taking. In both instances the court shall remand the order to the inland wetland agency for action not inconsistent with its decision.

"(b) To carry out the purposes of sections 22a-38, 22a-40, 22a-42 to 22a-43a, inclusive, 22a-401 and 22a-403, the commissioner, district or municipality may at any time purchase land or an interest in land in fee simple or other acceptable title, or subject to acceptable restrictions or exceptions, and enter into covenants and agreements with landowners."

the plaintiff with no economically viable use of his property, and therefore amounted to a practical confiscation. Alternatively, the court also undertook to balance the impact of the agency's action on the value of the plaintiff's property against the benefit to the public that would result from enforcement of the town's wetlands regulations. Measuring the diminution in the value of the plaintiff's property against its value as a residential building lot, the court concluded that the agency's action also constituted a taking under the balancing test.

The Appellate Court affirmed the judgment of the trial court that there had been a taking under both the practical confiscation and the balancing tests. *Gil* v. *Inland Wetlands & Watercourses Agency,* supra, 23 Conn. App. 379. We then granted the agency's request for certification to appeal to this court in order to consider the standard by which a taking based on the agency's denial of a building permit application is to be measured. *Gil* v. *Inland Wetlands & Watercourses Agency,* supra, 216 Conn. 829.

## II

As an analytic matter, before a court can review a landowner's claim that he has been deprived of his property without just compensation, the court must first define the property interest that has allegedly been taken. *Keystone Bituminous Coal Assn.* v. *DeBenedictis,* supra, 497; F. Michelman, "Property, Utility, and Fairness: Comments on the Ethical Foundations of 'Just Compensation' Law," 80 Harv. L. Rev. 1165, 1192 (1967). In their arguments concerning the appropriate standard for evaluation of a takings claim, the parties in this case have focused on their disagreement over the reasonableness of the plaintiff's expectations of improving his property through residential develop-

ment when he bought it subject to existing wetlands regulation. The plaintiff maintains that the legal effect of the denial of his application for a building permit should be measured by its impact on the value of his property as a building lot, while the agency contends that the relevant diminution of value, if any, should be measured against the value of the property in its natural state as wetlands.

The first issue before us is whether to affirm the Appellate Court's conclusion that the record contains sufficient evidence to support the trial court's fact-bound determination that the plaintiff had a reasonable investment-backed expectation[6] that he could build upon the lot he had purchased. The agency makes two arguments to the contrary, neither of which we find persuasive.

The agency contends, as a matter of fact, that testimony from the plaintiff's own appraiser that, three months after the plaintiff's purchase, the property would have had a value of $80,000 if buildable, demonstrates the speculative nature of the plaintiff's pur-

---

[6] Although the United States Supreme Court has, on occasion, invoked the reasonable investment-backed expectation standard in its regulatory takings cases; see, e.g., *Penn Central Transportation Co.* v. *New York City*, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1977), reh. denied, 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 198 (1978); the court has not expressly defined the meaning of that phrase, choosing instead to define it by example. The court has identified its decision in *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393, 43 S. Ct. 158, 67 L. Ed. 322 (1922), as the leading case for the proposition that a regulation that frustrates distinct investment-backed expectations may amount to a taking. In *Pennsylvania Coal Co.*, the claimant had sold the surface rights to property, yet had reserved the right to remove the coal thereunder. A Pennsylvania statute, enacted after the sale and reservation of these rights, forbade, with certain exceptions, any mining of coal that would cause the subsidence of surrounding houses. The statute rendered it commercially impracticable for the claimant to mine coal, and thus effectively destroyed the rights that the claimant had expressly reserved. The court found a taking of the claimant's rights to the coal under these circumstances.

chase for only $50,000. The trial court might reasonably have found, however, that even so substantial a discount from market value reflected nothing more than a prudent evaluation of the foreseeable difficulties of resolving the tension between the property's listing on a residential subdivision map and the wetlands constraints with which it was burdened.

The agency further contends, as a matter of law, that our decision in *Manor Development Corporation* v. *Conservation Commission,* 180 Conn. 692, 433 A.2d 999 (1980), requires a claim of diminution of value to be appraised by the "injury to or loss of value of the property . . . in its natural state; not as applied to the property as the applicant might wish to change it." Id., 696, citing *Just* v. *Marinette County,* 56 Wis. 2d 7, 201 N.W.2d 761 (1972).

It is plausible that the natural state standard should govern a takings claim based on the impact of a regulation on property that was purchased as wetlands without any reasonable investment-backed expectation of development. In such instances, the landowner could hardly be heard to complain that his "interest" in developing the property was of such a nature as to merit constitutional protection against uncompensated regulatory takings. On the present record, however, that question is not before us.

We disagree with the agency, however, to the extent that it relies upon *Manor Development Corporation* for the proposition that the natural state standard should govern even when, as in this case, an individual purchased property with a reasonable investment-backed expectation of development. The landowner in *Manor Development Corporation* asserted a takings claim based on the conservation commission's refusal to permit development of seven of thirty-three building lots

because the seven lots were totally in wetlands areas. Although the commission's decision adversely affected the value of the landowner's property, we denied the landowner's takings claim because the diminution in value was not so great as to have left it without *any* economically viable use of its property. We did not rely on *Just* v. *Marinette County,* supra, to establish for this state a new standard of what would constitute a taking, but listed that case only as part of our survey of state court decisions that had held that a diminution in the value of property alone does not justify the conclusion that an unconstitutional taking has occurred. Id., 695.

It is worth noting that *Manor Development Corporation* referred with approval to prior cases in which we have held that zoning reclassifications[7] can constitute an unconstitutional taking when they leave a property owner with no economically viable use of his land other than exploiting its natural state. For example, in *Bartlett* v. *Zoning Commission,* 161 Conn. 24, 282 A.2d 907 (1971), we applied the practical confiscation standard to a takings claim based on the zoning commission's adoption of a new zoning regulation that limited the use of the landowner's tidal marshlands property to uses such as wooden walkways, wharves and duck blinds. We concluded that such restrictions were tantamount to an unconstitutional taking of his property without just compensation. Similarly, in *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 197 A.2d 770 (1964), the zoning commission changed

---

[7] Unlike *Manor Development Corporation* v. *Conservation Commission,* 180 Conn. 692, 433 A.2d 999 (1980), this case does not involve a zoning reclassification. A deprivation of reasonable investment-backed expectations may occur, however, when a wetlands agency denies a permit for land zoned as a residential building lot and purchased solely for such a use just as it may occur when a landowner's property is reclassified as wetlands after it has been purchased for residential development.

the zoning classification of the landowner's property from a residential to a flood plain district allowing as permitted uses only parks, marinas, wildlife sanctuaries, nursery gardening and the like. Id., 306 n.1. This court affirmed the ruling of the trial court that the permitted uses were either nonviable with respect to the landowner's property, or would not provide the landowner with any reasonable or practicable means of obtaining income from his property. Id., 310. We concluded, therefore, that the zoning regulations, as applied to the landowner's property, amounted to a practical confiscation of his land. Id., 311.

It is evident from these cases that a landowner, who purchased property with a reasonable expectation of residential or commercial development, has suffered a taking if regulatory constraints allow him to use his land only in its natural state without any economically viable alternative use thereof. While the state is unquestionably entitled to protect wetlands from potentially harmful development, it is not entitled to impose the entire cost of such protection upon a landowner who purchased property with the reasonable expectation of developing it for residential or business purposes. As Justice Holmes remarked, "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Pennsylvania Coal Co.* v. *Mahon,* supra, 416. Indeed, the legislature recognized as much when it specifically provided that if, on appeal from an action of the agency, a court finds that the action "constitutes the equivalent of a taking without compensation, it shall set aside the action or it may modify the action so that it does not constitute a taking." General Statutes § 22a-43a. The legislature has also empowered the commissioner of environmental protection and municipalities to purchase wetlands property. General Statutes § 22a-42.

### III

The factual reasonableness of the plaintiff's expectations does not, however, end our inquiry. Even if the plaintiff's interest is measured by the value of his building lot, he cannot prevail unless the agency's denial on the merits of his fourth application for a building permit constituted a taking, either as a practical confiscation of his property; *Bartlett* v. *Zoning Commission,* supra, 31; *Dooley* v. *Town Plan & Zoning Commission,* supra, 311–12; or by application of a balancing test. *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 151, 365 A.2d 387 (1976); *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 356, 362 A.2d 948 (1975).

As we have recently reiterated, however, the plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination. *Port Clinton Associates* v. *Board of Selectmen,* 217 Conn. 588, 604, 587 A.2d 126 (1991); see also *McDonald, Sommer & Frates* v. *Yolo County,* 477 U.S. 340, 348–49, 106 S. Ct. 2561, 91 L. Ed. 2d 285 (1986); *Agins* v. *Tiburon,* 477 U.S. 255, 260, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980); *Williamson Planning Commission* v. *Hamilton Bank,* 473 U.S. 172, 186, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985); *Hodel* v. *Virginia Surface Mining & Reclamation Assn.,* 452 U.S. 264, 297, 101 S. Ct. 2352, 69 L. Ed. 2d 1 (1981). To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow *any* reasonable alternative use of his property. *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 553, 525 A.2d 940 (1987).

The trial court in this case determined that the agency's denials of the plaintiff's four applications, three on their merits, were sufficient to show that the agency had reached a final, authoritative decision on how it would apply the wetlands regulations to the plaintiff's property. The Appellate Court implicitly accepted the trial court's determination on the finality issue.

Our review of the record, however, convinces us that the plaintiff has not met his burden of demonstrating finality. A number of factors lead us to this conclusion. First, although we agree with the Appellate Court that the plaintiff had a reasonable expectation of developing the property for residential purposes, the wetlands status of a portion of the property should also have warned the plaintiff that development would be difficult and that repeated applications might be necessary before the agency would approve an application for a building permit. In this case, although the plaintiff submitted four applications, only three were actually reviewed on their merits.

Additionally, the record discloses that whereas neighboring homes on similarly sized lots varied in footprint size from 800 to 900 square feet, each of the plaintiff's applications proposed single family houses with footprints exceeding 1500 square feet. Furthermore, although the plaintiff's final application reduced the footprint of the proposed house to 1800 square feet from the 2100 square feet of the preceding application, the final application nonetheless represented an increase from an earlier application's 1500 square feet proposed residence. In light of these factors, we cannot say that the agency would have rejected a more modest proposal if one had been offered by the plaintiff.

Our conclusion is not inconsistent with our decision in *Port Clinton Associates* v. *Board of Selectmen,* supra.

We there stated that although repeated applications and denials are not necessary to show finality, "in most cases, a property owner must do more than submit one plan to an agency in order to establish that the agency's decision is 'final' for the purposes of the takings clause." Id., 607. We further noted that the " '[r]ejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews.' " Id., 608, citing *McDonald, Sommer & Frates* v. *Yolo County,* supra, 353 n.9.

The decision of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court with direction to render judgment for the agency on the plaintiff's takings claim.

In this opinion the other justices concurred.