[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Michael Tartsinas, and AMF Property Management Corp., appeal the decision of the defendant Enfield Inland Wetlands Agency/Conservation Commission which denied the plaintiffs' application to develop property owned by Tartsinas near Hazard Avenue in a business zone in Enfield. The defendant commission acted pursuant to General Statutes § 22a-42a. The plaintiffs appeal pursuant to § 22a-43. The defendant state commissioner of environmental protection appears pursuant to § 22a-43 et seq.
The court finds the issues in favor of the defendant commission.
As owner of the property in question, plaintiff Tartsinas is aggrieved by the decision of the defendant commission and has the requisite standing to bring this appeal.
The property in question consists of 7.4 acres, of which 1.4 acres are wetlands protected by statute. In his application for a permit, the plaintiff proposed to construct on the property two commercial buildings with adjacent paved parking and provide access by a paved driveway connecting to Hazard Avenue. The proposed buildings and parking areas would be built directly on wetlands or within the 25 foot buffer zone required by the commission's regulations, and the driveway would run through wetlands.
The commission held a public hearing on the application over two days, February 17, 1998, and March 3, 1998.
At the hearing on February 17, 1998, the plan submitted by the plaintiffs showed that the proposed construction would disturb 44,784 square feet of wetlands and destroy 14,256 square feet of wetlands. CT Page 1072
The plaintiffs' plan did not include detention areas to capture and detain the runoff of groundwater because they understood that the town engineering staff had adopted a new "policy" of allowing water to flow immediately and unimpeded out of an area in the lower part of a watershed, such as the plaintiffs' property, so that the area would remain open to accept water flowing in from areas higher in the watershed.
In order to minimize the adverse impact that the runoff of polluted groundwater would have, the plaintiff's plan proposed the installation of "stone spreaders" surrounding the paved areas. The purpose of such an installation would be to slow the runoff and to filter out the pollutants before the groundwater reached other parts of the watershed.
During the February 17 hearing, the principal concerns expressed by the commissioners included the extent of the wetlands area involved, the increase in groundwater runoff from the impervious pavement of the parking lots that would be constructed within the regulated area, the potential pollution of that groundwater from motor vehicle oils, sand and sediment, and the consequent pollution of other wetlands in the watershed, including Freshwater Brook and other brooks located downstream from the plaintiffs' property.
The commission took no action at that February hearing; rather, the commission continued the hearing to allow the plaintiffs to respond to the concerns expressed.
The hearing resumed on March 3, 1998, and the plaintiffs submitted a revised plan at that time in an effort to address the commission's earlier concerns.
The revised plan reduced the area of wetlands involvement to 25,728 square feet and destruction of wetlands to approximately 12,000 square feet. The revised plan also called for the inclusion of detention areas for the water runoff, with the blessing of the town engineer's office, in addition to the installation of the stone spreaders originally proposed.
The plaintiffs presented testimony and materials to show that the rate of the runoff of groundwater from the property would be reduced from that which it would have been pre-construction. They also presented evidence to show that the pollutants would be effectively filtered by the stone spreaders. CT Page 1073
The plaintiffs also submitted an environmental impact report prepared by a consultant that they had retained, stating that "down stream properties will not be negatively impacted by the proposed development."
The record reflects that the commission's staff essentially agreed that the revised plan mitigated most of the adverse effects of the encroachment on the wetlands.
Finally, Phil Tartsinas, the manager of plaintiff AMF, stated that the plaintiffs had considered "approximately ten" alternative plans. Although the plaintiffs did not present all of them, their engineer did describe some of them and stated reasons why the plaintiffs considered those to be unfeasible.
Following the hearing, on March 3, 1998, the commission voted to deny the application. On March 4, 1998, the commission informed the plaintiffs of its decision, stating that the proposed project "was found to have an adverse impact on inland wetlands and watercourses; and that prudent and feasible alternatives are believed to exist." It is this decision which is the subject of the appeal to this court.
In support of their appeal, the plaintiffs advance two broad arguments: 1) that the commission's decision was not supported by substantial evidence and 2) that if the decision was sufficiently supported by the evidence, it constituted a taking without compensation pursuant to C.G.S. 22a-43a.
General Statutes § 22a-42a requires the commission to consider the factors set forth in § 22a-41 in ruling on an application for a wetlands permit. Those factors include the environmental impact of the proposed activity, the loss of wetlands resources, the effectiveness of measures to mitigate any resulting pollution, and any feasible and prudent alternatives to the proposed activity which would cause less or no environmental impact to the wetlands. Section 22a-41 further provides that if the commission finds that the proposed activity "may have a significant impact on wetlands or watercourses, a permit shall not be issued unless (the commission) finds on the basis of the record that a feasible and prudent alternative does not exist."
In this case, there is no serious dispute that the plaintiffs' project would have a significant adverse effect on CT Page 1074 existing wetlands; indeed, the plan called for buildings and paved parking areas to be constructed directly on wetlands, thereby resulting in the loss of approximately 12,000 square feet of such wetlands. What is in dispute is whether the plaintiffs' proposal to mitigate the damage would be effective.
In addition to that evidence in the record which tends to support the plaintiffs' position, there is also evidence of potential adverse consequences of the proposed project. With respect to the issue of groundwater runoff, for example, the plaintiffs' own engineer calculated that construction of the project would double the rate of such runoff from the property. Further, as already noted, with respect to stone spreaders, the use of this technique was untested in Enfield and the commission had to rely entirely on the plaintiffs' experts for their information. On this point, the plaintiffs' own environmental consultant, although supporting the use of the technique, conceded during the March 3 hearing that "where you rely on infiltration with groundwater, there is a potential for groundwater contamination. Any kind of infiltration system has that." Finally, some of the commissioners had inspected the site and were able to relate their personal knowledge of the terrain to the evidence presented by the plaintiffs. In particular, individual commissioners stated their findings that the project would destroy wildlife habitats in the area.
Although the plaintiffs presented evidence, as noted, that their plan would eliminate or minimize the various adverse consequences of the project, the commission was required to determine whether the plan would adequately accomplish such mitigation. In so doing, the commission was required to consider all of the evidence in the record but was free to determine which evidence should be afforded the greater weight.
In their memoranda of law submitted to the court, the parties have accurately summarized the standards to which this court must adhere in reviewing the commission's decision. These standards have been developed and articulated by our appellate courts in a series of decisions which erect difficult obstacles to a challenge of a decision rendered by a wetlands agency after an evidentiary hearing. The agency's decision must be sustained if the record contains evidence that supports any one of the reasons given for the decision. Such evidence must be substantial, but the possibility of drawing two different conclusions from the evidence does not prevent it from being deemed substantial. The CT Page 1075 plaintiff has the burden of establishing that substantial evidence that would support the agency's decision does not exist. In determining whether the agency acted on the basis of substantial evidence, the court must not substitute its judgment for that of the agency on issues of fact and the credibility of witnesses. An administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the evidence presented to it so long as the conduct of the hearing is fundamentally fair. The agency may consider the advice and assistance it receives from its own professional staff, but it is the agency itself that must make the final decision, based on the facts that it finds to be established. Samperi v. Inland Wetlands Agency, 226 Conn. 579
(1993); Red Hill Coalition, Inc. v. Conservation Commission,212 Conn. 710 (1989); Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525 (1987); Laufer v. Conservation Commission,24 Conn. App. 708 (1989).
During the course of the hearing and during their discussions prior to voting on the application, the commissioners repeatedly noted the potential adverse consequences of the plaintiffs' project. These included increased runoff of groundwater, pollution resulting from that runoff, and the loss of habitat for animals and birds. In support of their decision to deny the application, the commissioners essentially disbelieved the plaintiffs' evidence that the adverse consequences would be sufficiently mitigated. There was substantial evidence, as summarized above, to support the commission's conclusion that the proposed project would have a significant adverse impact on the wetlands, notwithstanding the contrary evidence presented by the plaintiffs. The commission's decision must, therefore, be affirmed in that regard.
General Statutes § 22a-41(b)(1) provides that when there is such an impact on the wetlands, a permit shall not be issued unless the commission finds that "a feasible and prudent alternative does not exist." The plaintiffs had the burden of proving that their proposed plan was the only feasible and prudent alternative. Samperi v. Inland Wetlands Agency, supra,226 Conn. 593.
In its decision, the commission determined that the plaintiffs had not met that burden. In reviewing this determination, the court notes that the plaintiffs claimed to have considered approximately ten alternatives and rejected all CT Page 1076 of them as unfeasible or not prudent. The plaintiffs explained their reasoning for rejecting some but did not even discuss others. Furthermore, the commission members themselves questioned why some alternatives, such as reducing the scale of the project, would not be feasible and prudent. The court concludes that the plaintiffs have not met their burden of proof on this issue.
Lastly, the plaintiffs claim that the court should find that the commission's action constitutes a taking without compensation. See General Statutes § 22a-43a.
In order to establish a takings claim, an applicant must demonstrate the the finality of the commission's determination. "To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of (the) property." (Emphasis in the original.)Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404, 415
(1991). The plaintiffs have manifestly not met that requirement in this case. They have made only one application to the commission. They indicated during the hearing that they had considered, but were not then proposing, alternative plans. Some commission members, speaking individually, indicated that they might look favorably on a scaled down plan. The plaintiffs are a long way from a final determination by the commission that there is no reasonable alternative use of their property.
For all of the reasons set forth above, the plaintiffs' appeal is dismissed.
Maloney, J.