[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I Statement of the Case
The plaintiffs, Edmund and Nancy Ashe, appeal from the decision of the defendant, the New Fairfield conservation commission (the commission), denying an application by the Ashes to construct a single family dwelling, well, septic tank, driveway and pumping station within the one-hundred fifty feet regulated upland review area of the wetlands and watercourses located on the property. The Ashes appeal pursuant to General Statutes § 22a-43 (a).[1]
 II Facts
The record reveals the following facts. The plaintiff filed two other applications for a permit to construct a dwelling on their property within the regulated upland review area. The first application was denied on January 28, 1998, based on the commission's finding that the proposed site for the house was on top of an intermittent watercourse. (Transcript, January 28, 1998, pp. 13-14.) The commission further found that the proposed design did not meet the regulations. (Transcript, January 28, 1998, p. 14.) It was unanimously denied without prejudice. (Transcript, January 28, 1998, p. 14-15.) The second application was withdrawn because the commission informed the plaintiff that the application would not be approved with a septic system within seventy-five feet of a watercourse. (Transcript, April 22, 1998, p. 10.)
The present application is the third application submitted by the plaintiff. The regulated activities include excavation, driveway construction and activity in the upland review area. (Return of Record [ROR], Item A-1, p. 8.) In this application, the plaintiff adjusted the plans based on the comments of the commission during hearings on the previous applications. The size of the house was reduced and the septic system is no longer within seventy-five feet of a watercourses and wetlands. The house is fifty feet from the wetlands and thirty-eight feet CT Page 13692 from the watercourses. The construction impacts include digging through a watercourse to install the force main and crossing the watercourses with a four wheel drive, rubber tire back hoe. (ROR, Item H, p. 4 pp. 39-41.) Two commissioners voted to approve the application, two commissioners voted to deny the application, and one commissioner abstained. Therefore, the application was denied because of the tie vote. The plaintiff now appeals from the decision of the commission.
 III Jurisdiction
General Statutes § 22a-43 governs an appeal from the decision of an inland wetlands and watercourses commission to the Superior Court. "It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute," Munhall v. Inland Wetlands Commission,221 Conn. 46, 50, 602 A.2d 566 (1992).
A. Aggrievement
"Pleading and proof that the plaintiffs are aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal." Munhall v. InlandWetlands Commission, supra, 221 Conn. 50. An owner of the subject property is aggrieved and entitled to bring an appeal. See WinchesterWoods Associates v. Planning Zoning Commission, 219 Conn. 303, 308,592 A.2d 953 (1991). The Ashes allege that they are aggrieved by the decision because they own the land which is the subject of the decision. At the hearing on June 4, 2001, the court found that Edmund Ashe was aggrieved as the property owner, but Nancy Ashe was not aggrieved as she was not listed on the deed and she did not present any evidence regarding her aggrievement. Accordingly, only Edmund Ashe has standing to maintain this appeal.
B. Timeliness
General Statutes § 22a-43 (a) provides, in pertinent part, that an appeal may be commenced "within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action. . . ." General Statutes § 8-8 (b) provides, in pertinent part, that "[t]he appeal shall be commenced by service of process . . . within fifteen days from the date that the notice of the decision was published as required by the general statutes."
The commission's decision was published on February 23, 2000, in the Citizen News. (ROR, Item C-18.) The plaintiff served the chairman of the CT Page 13693 commission and the commissioner of environmental protection on March 8, 2000. (Sheriff's Return. ) Accordingly, it is submitted that the plaintiff filed a timely appeal and served the appropriate parties.
 IV Standard of Review
"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that support any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Internal quotation marks omitted.) Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587-88, 682 A.2d 1286 (1993). "In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. . . . [T]he plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." (Citations omitted.) Id., 587.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citations omitted; internal quotation marks omitted.) Cadlerock Properties Joint Venture, L.P. v. Commissionerof Env. Protection, 253 Conn. 661, 676, 757 A.2d 1 (2000). Substantial evidence is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) Id., 677.
 V Discussion
The plaintiff alleges that the decision of the commission was arbitrary, illegal, capricious, and in abuse of its discretion. The plaintiff argues that the seventy-five foot setback in Section 4.5 of the New Fairfield inland wetland and watercourse regulations violates General Statutes § 22a-42a (f). The plaintiff contends that the commission ignored credible, uncontradicted expert testimony and evidence. The CT Page 13694 plaintiff also argues that there was improper participation by commissioners. Specifically, the plaintiff asserts that Commissioner Jeffery Main purportedly recused himself from the hearing, but proceeded to make comments on the application through his wife, Roseanne Main. The plaintiff also asserts that another commissioner, Kim Hanson, had not participated in the previous hearings on this application and was not sufficiently familiar with the application to make an informed decision. The plaintiff further argues that the denial of the application results in a taking of the plaintiff's property. The plaintiff requests the court to sustain the appeal and grant the plaintiff a permit to construct the home within the seventy-five foot setback as proposed in the third application.
The commission argues that the seventy-five foot setback is a valid restriction. The commission asserts that the record supports the factual findings of the commission. The commission contends that participation by Commissioners Main and Hanson was proper. The commission also argues that the commission's denial of the third application is not a taking. The commission requests that the court dismiss the appeal because the decision is supported by the record.
A. Whether the 75 foot setback violates General Statutes § 22a-42a (f)
The New Fairfield inland wetland and watercourse regulations § 4.5 states, in pertinent part, that "[n]o activity shall be conducted in non-wetland areas which are closer than seventy-five (75) feet from regulated wetlands or watercourses. The Agency may, by a majority vote of its members reduce the said buffers when, in its judgment, the reduced distance will not be detrimental nor will it endanger the adjacent wetland."
The plaintiff contends that the regulation acts as an outright prohibition on any activities conducted within seventy-five feet of wetlands or watercourses and, therefore, it violates General Statutes § 22a-42a (f). Section 22a-42a (f) provides that "[i]f a municipal inland wetlands agency regulates activities within areas around wetlands or watercourses, such regulation shall (1) be in accordance with the provisions of the inland wetlands regulations adopted by such agency related to application for, and approval of; activities to be conducted in wetlands or watercourses and (2) apply only to those activities which are likely to impact or affect wetlands or watercourses."
Section 4.5 of the New Fairfield inland wetlands and watercourses regulations is not an outright prohibition of activities within the seventy-five feet upland review area. The regulation requires the CT Page 13695 landowner to seek approval by the commission before conducting any activities within seventy-five feet of the wetlands or watercourses. By majority vote the commission may reduce the seventy-five feet buffers upon a finding that the activity will not be detrimental or endanger the adjacent wetland. This is consistent with General Statutes § 22a-42a
(f).
The legislative history indicates that General Statutes 22a-42a (f) "codifies what is in the guidance documents of the Department [of Environmental Protection] to those inland wetland commissions on the jurisdiction over buffer areas." 38 H.R. Proc., Pt. 20, 1995 Session, p. 7430. The guidance documents provide, in pertinent part' that regulations for upland review areas "are based on a presumption that the regulated activity will have an adverse impact on the adjacent wetland or watercourse. A person proposing to conduct a regulated activity has the burden to demonstrate to the wetlands agency that the impacts of his proposal are consistent with the purposes and provisions of the Inland Wetland and Watercourse Act and, therefore, he is entitled to a permit." State of Connecticut, Department of Environmental Protection, Guidelines: Upland Review Area Regulations, Connecticut's Inland Wetlands Watercourses Act, June 1997, p. 5. The fact that § 4.5 of the New Fairfield inland wetlands and watercourses regulations presumes that activity within seventy-five feet of a wetlands and watercourse will affect the wetlands and watercourse is consistent with the guidelines. Furthermore, the applicant has the burden to demonstrate to the commission that such activity will not affect the wetlands.
The plaintiff distinguishes between regulations that designate activities within seventy-five feet of a wetland or watercourse as a "regulated activity" and New Fairfield's regulation which states no activity shall be conducted within seventy-five feet of a wetland or watercourse unless the commission determines that the activity will not endanger or detrimentally affect the wetlands. Although the language in the New Fairfield regulations appears prohibitory it is not any more prohibitory than the regulation which defines activity as "regulated activity", because in both instances the applicant will have to demonstrate that the activity does not impact the wetlands to receive a permit from the commission. Defining an activity as a "regulated activity" prohibits that activity until the property owner demonstrates that the activity will not affect or impact the wetlands or watercourses. The commission grants a permit only when the property owner has demonstrated the proposed activities will not affect or impact the wetlands or watercourses. Section 4.5 of the New Fairfield inland wetlands and watercourses regulations does the same thing even though it appears to prohibit more. CT Page 13696
The New Fairfield inland wetlands and watercourses regulations § 4.5 complies with General Statutes § 22a-42a (f) because § 4.5 allows the commission to reduce the buffer area when the commission finds that the activity will not be detrimental or endanger the adjacent wetlands. Accordingly, it is submitted that the court should find that § 4.5 of the New Fairfield inland wetlands and watercourses regulations is legal and consistent with the intent and purpose of General Statutes § 22a-42a (f).
B. Whether the Commission Ignored Uncontradicted Expert Evidence
"[A]n administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." (Internal quotation marks omitted.) Samperi v.Inland Wetlands Agency, 226 Conn. 579, 597, 682 A.2d 1286 (1993). "In determining whether an administrative finding is supported by substantial evidence, a court must defer to the agency's assessment of the credibility of witnesses . . . even an expert, in whole or in part." (Internal quotation marks omitted.) Gardiner v. Conservation Commission,222 Conn. 98, 108, 608 A.2d 672 (1992).
The plaintiff contends that the commission is required to accept his expert evidence because the plaintiff provided the only expert evidence on the impact of the proposed activities. The commission, however, "as the judge of credibility, is not required to believe any witness, not even an expert." (Internal quotation marks omitted.) Pelliccione v.Planning Zoning Commission, 64 Conn. App. 320, 331, ___ A.2d ___ (2001). The commission is also "entitled to reject [an] application on the basis of its own members' testimony or the testimony of other lay witnesses, without additional expert testimony." Kaufman v. ZoningCommission, 232 Conn. 122, 156, 653 A.2d 798 (1995).
"It is possible for non-expert testimony to meet the substantial evidence standard on technically complex matters. The agency members can view the property involved in the application. . . . In order to reply upon knowledge obtained from visits to the property there must be factual findings on the record. Where the agency members view the site and state their findings on the record, the court will usually give more weight to factual conclusions than where the agency merely relies upon documents filed on an application." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (1999) § 33.9, p. 183. The commission conducted site walks of the property and reported their findings on the record, which in some cases contradicted the expert reports. Accordingly, it was reasonable for the commission to rely on these factual findings rather than the expert reports submitted by the plaintiff. CT Page 13697
The record shows that Henry Moeller, one of the plaintiff's experts, failed to describe one of the watercourses on the plaintiff's property as a watercourse. The commission discovered the watercourse during one of several site walks of the property. The commission made it clear to the plaintiff that they disagreed with the report as far as the watercourse was concerned. "It's not a question of accepting Henry's decision on whether it's a wetlands . . . It's a watercourse." (Supplemental Return of Record [SROR], Item 2, p. 11.) The builder stated that "he doesn't say it's a watercourse . . . he's saying it's ground water that's not going to be disturbed." (SROR, Item 2, p. 11.) One of the plaintiff's other experts confirmed the commission's discovery of the additional watercourse. "As a matter of fact if; if you read the application, you will read [Leggette, Brashears and Graham, Inc.'s] comments and they have a discussion about some of the things we talked about [on previous applications] and despite . . . the soil consulting service report [Moeller's report] at the time we discussed the intermittent watercourse and the soil consulting service denied and the engineer denied that [there] was ever such a thing and [Leggette, Brashears, and Graham] says there certainly is." (SROR, Item 3, p. 3.) Therefore, it was reasonable for the commission to disregard the first expert's report.
The Leggette, Brahears, and Graham report "was to determine the water-quality impact of a proposed septic system in the eastern portion of the site on the downgradient wetlands and watercourses." (ROR, Item E-9, p. 1.) The report stated that there "would be some quantitative and water-quality impacts, but the analysis indicates that all such impacts will be acceptable." (ROR, Item E-9, p. 10.) The commission noted that the report was only in regards to the septic system and no other portion of the house. Accordingly, it was reasonable for the commission to still consider the other impacts associated with the proposed activities.
The record shows that there will he an impact on the wetlands and watercourses on the plaintiff's property. The record shows that the proposed activities include digging through a watercourse on the property to install the force main for the septic system. (ROR, Item H, p. 3.) Additionally, the machinery, which the builder describes as a rubber tire, four wheel drive back hoe, will have to cross the watercourses to get to the septic. (ROR, Item H, p. 4.) One commission member expressed concern over the existence of a third watercourse that he discovered in a site walk, which the plaintiff failed to delineate in the plans for the proposed activities. (ROR, Item H, pp. 19-20.) The builder stated that "in practicality we would treat that whole area as a watercourse. I mean we're sleeving the force main through there." (ROR, Item H, p. 20.) The builder further stated that "of course there would be an impact to dig through [the watercourse]." It was also noted that there would be some CT Page 13698 irreversible changes caused by the construction in the watercourses. (ROR, Item H, p. 50.)
The record demonstrates that the watercourses will be affected by the construction, which would inevitably affect the wetlands in the area. Although it is clear from the record that the plaintiff had tried to alleviate the commission's concerns, there was still some concern over the construction in the watercourse and the location of the house and garage almost entirely within the seventy-five foot buffer area. Although the plaintiff argues that there will be no impact, it is apparent from the record, as discussed above, that there will be an impact on the watercourses and wetlands. It is submitted that the decision of the commission was supported by substantial evidence in the record.
C. Whether There Was Improper Participation by Commission Members
The plaintiff argues that two of the commissioners, Main and Hanson, improperly participated in the hearing. The record reveals, however, that the participation by Commissioners Main and Hanson was proper.
Commissioner Main recused himself from participating in the hearings on the plaintiff's application because Commissioner Main's property abuts the plaintiff's property and Main has expressed his objections to the plaintiff's proposed activities on prior applications. Although the record shows that Roseanne Main, Commissioner Main's wife, voiced her objections during the hearing on the application, there is no indication in the record that Commissioner Main commented on the application. Even if Commissioner Main told Roseanne Main what to say this does not qualify as improper participation.
The Supreme Court was faced with a similar situation in Cioffoletti v.Planning Zoning Commission, 209 Conn. 544, 556-557, 552 A.2d 796 (1989) (Cioffoletti I). In Cioffoletti I the plaintiffs claimed that a commissioner's wife's remarks, which were made on her own behalf and upon her husband's behalf; violated General Statutes § 22a-42 (c). Id., 556. The plaintiffs claimed "that by having his opinion voiced through his wife at the hearing, Nelson Gelfman effectively sidestepped the prohibition in § 22a-42 (c) of participating in a hearing from which he was disqualified." Id., 556-557. The court held that while General Statutes "[section] 8-11 prohibits any commission member from appearing for another party in any matter before the commission . . . General Statutes § 22a-42 (c) contains no such proscription against appearing before an inland wetlands agency. Indeed, General Statutes § 22a-42a
(c), which addresses public hearings on wetland applications, states that `[a]t such hearing any person or persons may appear and be heard.'" Id., 557. Accordingly, the court concluded that "Nelson Gelfman's remarks as CT Page 13699 voiced through his wife did not constitute `participation,' and therefore, did not violate the prohibition in § 22a-42 (c)." Id.
Similarly, in the present case, Commissioner Main's remarks as voiced through his wife do not constitute participation. Commissioner Main did not participate as a member of the commission during the hearing, and he did not vote on the application. Accordingly, it is submitted that the court should find that any of the commissioner's objections to the application that may have been voiced through his wife did not constitute improper participation by Commissioner Main.
"Although a commission member in an administrative hearing need not be present at the public hearing as a condition precedent for that member to vote on the application, an absent commission member must at least acquaint himself sufficiently with the issues raised and the evidence and arguments presented at the public hearing in order to make an informed judgment." (Internal quotation marks omitted.) Jago-Ford v. Planning andZoning Commission, 34 Conn. App. 402, 406, 642 A.2d 14 (1994). "Whether such a member has discharged his obligation to acquaint himself is in the first instance a question of fact for the trial court." Id., 407. "The party who challenges the action of the commission as illegal in this respect has the burden of proof." Lauer v. Zoning Commission,220 Conn. 455, 470, 600 A.2d 310 (1991).
The plaintiff asserts that Commissioner Hanson did not acquaint himself sufficiently with the issues raised and the evidence presented at the hearing. The record does not support the plaintiff's contentions. The record demonstrates that Commissioner Hanson did acquaint himself with the expert reports submitted by the plaintiff. "The Board's secretary supplied Mr. Hanson with all pertinent information on the proposal from previous meetings for his review." (ROR, Item D-7, p. 2.) Prior to voting, Commissioner Hanson indicated that he had reviewed the information and he was able to vote. (ROR, Item H, p. 52.) Commissioner Hanson was also present during the February 15, 2000 hearing, he asked questions, and expressed his concerns about the proposed activities. It is submitted that the court should find that Commissioner Hanson's participation and decision to vote was proper because he was present at the public hearing on the current application and he read the expert reports.
D. Whether the Commission's Denial of the Plaintiff's Third Application Constitutes a Taking
"[B]efore a court can review a landowner's claim that he has been deprived of his property without just compensation, the court must first define the property interest that has allegedly been taken." Gil v.CT Page 13700Inland Wetland and Watercourses Agency, 219 Conn. 404, 410, 593 A.2d 1368
(1991). "A landowner, who purchased property with a reasonable expectation of residential or commercial development, has suffered a taking if regulatory constraints allow him to use his land only in its natural state without any economically viable alternative use thereof While the state is unquestionably entitled to protect wetlands from potentially harmful development, it is not entitled to impose the entire cost of such protection upon a landowner who purchased property with the reasonable expectation of developing it for residential or business purposes." Id., 414.
The record reveals that the plaintiff had a reasonable expectation of developing his property for residential purposes because the property is taxed as a building lot. At the time of the hearing, the commissioner commented that "[i]t has been demonstrated that the area is qualified as a building lot, taxes have been paid on it. . . ." (ROR, Item H, p. 50.) The court's inquiry, however, does not end upon a showing that the plaintiff had reasonable expectations of developing his property.
The plaintiff must also establish the finality of the agency's decision. "[T]he plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination." Gil v. InlandWetlands Watercourses Agency, supra, 219 Conn. 415. "To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property." Id. In Gil v.Wetlands Watercourses Agency, supra, 219 Conn. 416, the court stated that although "the plaintiff had a reasonable expectation of developing the property for residential purposes, the wetlands status of a portion of a property should also have warned that plaintiff that development would be difficult and that repeated applications might be necessary before the agency would approve an application for a building permit." The court also noted that the plaintiff had submitted four applications, but only three were reviewed on the merits and the agency may have approved a more modest proposal had one been submitted. Id.
In the present case, the plaintiff has submitted three proposals, however, only two were reviewed on the merits. There is no indication that a more modest proposal would not be approved by the commission. The plaintiff has failed to demonstrate that the commission will not allow him any reasonable alternative use of his property. Accordingly, the court concludes that the denial of the plaintiff's application does not constitute a regulatory taking because the plaintiff did not establish the finality of the commission's decision. CT Page 13701
 VI Conclusion
Based on the foregoing analysis the court finds that the commission's decision was not arbitrary, capricious, illegal or in abuse of its discretion. The commission's decision was supported by the record. The plaintiff's appeal is dismissed.
HOLDEN, J.