PATRICK R. GIL *v.* INLAND WETLANDS AND WATERCOURSES AGENCY OF THE TOWN OF GREENWICH ET AL.
(8418)

FOTI, LAVERY and CRETELLA, Js.

Argued May 11—decision released September 25, 1990

*John H. Reilly,* assistant town attorney, for the appellant (named defendant).

*Patrick R. Gil,* pro se, the appellee (plaintiff).

LAVERY, J. This is an appeal from the trial court's finding that the denial by the defendant inland wetlands and watercourses agency of Greenwich[1] of the plain-

---

[1] The commissioner of environmental protection was a party at the trial level but failed to file a timely appeal and is not a party to this appeal. We

tiff's application for a permit to construct a residence with a driveway and septic system in a wetlands constituted a taking of the plaintiff's property. The defendant claims that the trial court (1) should have given preclusive effect to earlier court rulings regarding the taking issue, (2) should not have relieved the plaintiff of the burden of showing the unavailability of alternate uses of the property, (3) in applying the balancing test in the taking context, failed to consider adequately the public benefit to be derived from the defendant's denial of the plaintiff's application, and (4) in its application of the balancing test, incorrectly measured the claimed diminution in value of the plaintiff's property relative to its highest and best use, that of a residential building lot. We affirm the judgment of the trial court.

The following facts were found by the trial court, and are pertinent to the confiscation issue, which is the basis of all of the defendant's claims on appeal.

The plaintiff purchased the 3.36 acre nonconforming lot in 1982. The lot is a legal nonconforming lot in a four acre zone. When the plaintiff purchased the property, and at all subsequent times, the defendant has been the inland wetlands and watercourses regulatory agency in the town of Greenwich and has promulgated regulations for that purpose. Although the property was not included on the town wetlands map at the time the plaintiff purchased it, 90 to 95 percent of the land in the 3.36 acre lot contains inland wetlands soils, and most of the nonwetlands portion of the property is inaccessible from the side of the property closest to Bedford Road, which provides access to the lot.

will therefore refer to the inland wetlands and watercourses agency of Greenwich as the defendant.

Shortly after purchasing the property, the plaintiff filed an application with the agency to build a single-family residence, driveway and septic system on the property. This application was denied and the denial was appealed to the Superior Court. On November 3, 1987, the appeal was dismissed. The trial court found that the agency's decision was supported by substantial evidence in the record and concluded that the denial of one application did not amount to an unconstitutional taking of the property without compensation. An appeal of that decision to this court was unsuccessful. *Gil* v. *Inland Wetlands & Watercourses Agency*, 19 Conn. App. 801, 560 A.2d 992, cert. denied, 212 Conn. 818, 565 A.2d 535 (1989).

In 1984, the plaintiff filed a second application with the defendant for a permit to construct a single-family residence, driveway and septic system; the second application contained changes from the first application. The defendant denied the application as incomplete and made no decision on the merits. No appeal was taken from the denial of the second application. A third application was filed in August, 1985. Although there were no substantial changes in the plan from the first application, it was different in that it proposed a less extensive infringement upon the wetlands areas of the lot. The application proposed placing fill for a septic system on one corner of the property and surrounding the septic system with a curtain drain and proposed to replant some previously cleared land to create an improved wetlands area. The third application of the plaintiff was denied by the defendant and an appeal was taken to the Superior Court, which dismissed the appeal for reasons other than confiscation. A subsequent appeal to this court was withdrawn.

On December 24, 1987, the plaintiff filed his fourth application to the agency for a permit to construct a single-family residence, driveway and septic system on

the lot. This plan differed from the previous applications in that it reduced the footprint of the house from 2100 square feet to 1800 square feet and relocated the house twenty-two feet to the east, away from a wetter portion of the property. The septic system location was also changed, moving it thirty feet away from the wetland portion of the property. By moving the house to the east, the length of the driveway was significantly shortened, reducing disturbance of wetland areas to less than three-fourths of an acre. The subject property is a "flag lot" and there is only one location where the driveway can enter the property. The new plan also proposed to create an open or pastureland area in previously disturbed areas adjacent to the residence on the south side of the lot. Whereas the third application had proposed that 1.5 acres of the 3.36 acre lot would remain as permanent open space; the fourth plan increased the area that would be permanently restricted from development. After a public hearing at which numerous expert witnesses testified, the application was denied by the agency on August 22, 1988, in a memorandum in which it made numerous findings.[2]

---

[2] The memorandum of the defendant stated the following:

"(1) The purpose of the proposed activities is to construct a single family residence.

"(2) An ecological evaluation of the affected inland wetlands and watercourse area is contained in the Agency staff report, field investigations and data sheets.

"(3) The Agency took note of its earlier findings associated with the decisions on Applications # 83-114, 83-204 and 85-118. The Agency adopted the statement of reasons by member William E. Hegarty, dated July 22, 1988.

"(4) The Agency adopted the staff comments in a supplemental staff report, dated July 8, 1988.

"(5) There are no significant changes associated with the proposed regulated activities in this application when compared to earlier applications.

"(6) After reviewing all of the documents submitted by Mr. Gil on July 25, in response to the supplemental staff report of July 8, 1988, and evaluating feasible and prudential alternatives, it was concluded that the appli-

The plaintiff appealed the denial to the Superior Court, where the issue of confiscation was tried de novo to the trial court. The trial court gave the parties the opportunity to present additional evidence on the taking issue. The parties did not do so but, rather, relied on documents already present in the record, including the appraisals, which the trial court found "dealt with the related issue of alternate uses available to the property owner." The trial court, in a scholarly and detailed decision, rendered judgment sustaining the appeal, finding an unlawful taking of property without just compensation. We affirm that judgment.

## I

The defendant's first claim is that the trial court failed to give preclusive effect to earlier court rulings

cant has not evaluated all feasible and prudential alternatives that would further minimize impacts on wetland areas.

"(7) In evaluating this application, the Agency was concerned about the potential cumulative impact of residential development on Raccoon Swamp. The proposed application would eliminate 4% of Raccoon Swamp, wetland complex. Loss of this wetland area and future anticipated losses would have a significant and adverse effect on the quality of the water in Carpenter's Brook and result in a significant reduction in wildlife habitat value.

"(8) Adverse environmental impacts associated with the proposed activities include the following:

"(a) potential sedimentation and erosion into adjacent inland wetland and watercourse areas.

"(b) the loss of viable inland wetland and watercourse wildlife habitats.

"(c) an uncontrolled increase in runoff due to site development and discharge from storm drains.

"(d) the degradation of surface water quality in Carpenter's Brook a tributary to a drinking water reservoir.

"(9) The Gil lot would have significant value to an abutter for speculation as to future use as documented by Michael B. Gold in a report dated June 6, 1988.

"(10) The proposed single family residence would reduce the adjacent inland wetland and watercourse areas capacity to support desirable biological life, prevent flooding, control sedimentation and erosion, assimilate waste, facilitate drainage, supply water and provide open space.

"(11) The construction activities associated with the single residence are regulated activities that would have a significant impact and major adverse effect on inland wetland and watercourse areas as defined in Section 2.0 of the Greenwich Inland Wetland and Watercourse Regulations."

regarding the taking issue. The defendant claims that the trial court, in finding that the application was the fourth alternative development proposal submitted by the applicant, ignored both Superior and Appellate Court decisions regarding earlier applications submitted by the plaintiff as well as a specific finding of the defendant regarding the identity of this application with earlier applications. We reject this claim.

The issue of whether there has been a taking or a practical confiscation is a fact bound determination that must be made on a case by case basis. *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 308–309, 197 A.2d 770 (1964). Where there has been a material change in circumstances, an administrative board is not precluded from reversing a previous decision. *Bright* v. *Zoning Board of Appeals,* 149 Conn. 698, 705, 183 A.2d 603 (1962). Because the taking decision depends heavily on the specifics of the applicant's proposed use of the land, differences between a prior and present application should be viewed as significant if they would have any bearing on the issue. Here, the plaintiff's fourth application presented a changed factual situation for the defendant's consideration, and presented an issue of fact to the trial court that had not been present in the previous litigation. The trial court was therefore not precluded from reaching it. See *Gionfriddo* v. *Gartenhaus Cafe,* 15 Conn. App. 392, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989).

## II

The defendant next claims that the trial court failed to hold the plaintiff to his burden of showing the unavailability of alternate uses of the property. The defendant argues that the plaintiff had the burden of proving the allegation made in the complaint that the defendant's decision effectively left the plaintiff with no reasonable alternate uses.

We agree that the plaintiff had this burden. *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 553 n.18, 525 A.2d 940 (1987). We conclude, however, that the plaintiff successfully met this burden.

The defendant's claim essentially challenges the sufficiency of the evidence underlying the trial court's findings on the unavailability of reasonable alternate uses. Those findings will be upheld unless we find that they are unsupported by the evidence or are clearly erroneous. *Sink* v. *Meadow Wood Country Estates, Inc.*, 18 Conn. App. 569, 574, 559 A.2d 725 (1989); *Harris Calorific Sales Co.* v. *Manifold Systems, Inc.*, 18 Conn. App. 559, 563, 559 A.2d 241 (1989).

Michael Gold, an appraiser employed by and appearing on behalf of the defendant, testified at the hearing that two alternative uses for the property existed; first, that the land be sold to an abutting property owner, and, second, that the property would be usable if it could be augmented through the purchase of adjoining property and the redrawing of the internal lot lines. A member of the defendant agency also suggested that the plaintiff could give the property to a conservation group and take a tax deduction.

At the hearing, the plaintiff presented the testimony of Peter Trefney, a real estate appraiser. Trefney testified that the lot had no economic value if it could not be developed, and that the suggestion that adjacent property be purchased and the lots reconfigured was not feasible. He also testified that, because of the physical characteristics of the property and the minimum lot size required under the zoning regulations, the sale of the plaintiff's lot to any adjoining owner would not create another building lot, and thus the only value of the property to adjoining owners would be as open space. The trial court, reviewing the testimony taken

at the hearing, found, within its discretion, that the plaintiff's witness was more credible than the defendant's witness.

The trial court is the sole arbiter of the credibility of witnesses. *Rodziewicz* v. *Giguere,* 5 Conn. App. 293, 295, 497 A.2d 1025 (1985). Where, as here, the record before the court presented conflicting testimony on the existence of alternative reasonable uses for the property, its finding, based on the credibility of witnesses, cannot be disturbed. *Zapolsky* v. *Sacks,* 191 Conn. 194, 201, 464 A.2d 30 (1983).

The trial court's finding is reasonably supported by the evidence.

### III

The defendant next claims that the trial court failed to consider adequately the public benefit to be derived from the defendant's denial of the plaintiff's application. We disagree.

In determining whether a taking has occurred on the basis of the particular facts of a case, the trial court weighs the degree to which the public benefits from enforcement of an inland wetlands regulation against the financial burden imposed upon the applicant by the enforcement of the regulation. It also considers the availability of realistic alternative uses of the property. This balancing test was promulgated by our Supreme Court in *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 151, 365 A.2d 387 (1976). The trial court, employing this test, concluded that a taking had occurred. We agree.

We note at the outset that, as discussed in part II, supra, the trial court found that the defendant's enforcement of the regulation left the plaintiff with no reasonable alternate uses for the property. With regard

to the financial impact on the plaintiff of the enforcement of the regulation, the plaintiff's appraiser, Trefney, testified that the enforcement of the regulation effectively destroyed the economic value of the plaintiff's property. Trefney estimated the value of the property with a permit at approximately $280,000. He also believed that without the permit the land had virtually no market value, because it would lack the two qualities that create value for real estate, namely, utility and desirability. The defendant's appraiser, Gold, estimated the value of the property without the permit at approximately $60,000. This estimate, however, was contingent upon the feasibility of his suggested alternate uses. Since the trial court rejected his proposed alternate uses, his estimate of the market value for the property was also implicitly rejected.

With regard to the public benefit to be gained from the enforcement of the regulation, the trial court reviewed the testimony of the numerous expert witnesses who testified in support of the plaintiff's application at the defendant agency's public hearing. John Risoli and John Giancola, civil engineers, testified that the approval of the application would not cause any problem due to sedimentation, erosion, water filtration, or water quality. Richard Benoit, an environmental scientist, testified that the installation of the septic system would have no adverse effect on the adjoining ecosystem. Donald Ferlow, another environmental scientist, testified that the plan minimized any potential adverse effect on the wetlands and that there were no superior alternatives to the plaintiff's proposal. William Mackail, the chief sanitarian for the town of Greenwich, testified that the proposal would have no adverse effect on the wetlands. There was also testimony to the effect that the Greenwich health department had issued a septic permit to the plaintiff, and that the area proposed to be built upon was not on the original wetlands map.

The defendant produced the testimony of Gold, the appraiser, and Michael Aurelia, a geologist. Aurelia expressed concern that (1) the proposed development would eliminate 4 percent of an isolated forty-three acre wetlands, (2) the installation of a septic system would be difficult, (3) the plaintiff's application did not address the loss of the wetlands pollution filtration function that was important for a watershed to a drinking water supply, and (4) the application did not address the related concern that the swamp was claimed to lead to a tributary of a drinking water supply. Aurelia did not claim, however, that the development plan and septic system would pollute the wetlands.

The trial court concluded that "based on the evidence presented . . . the court does not find any significant public injury if a three bedroom one-family residence septic system and driveway are built on 0.75 acres of a 3.36 acre lot according to the plan . . . . When the public interest is balanced against the private interest, consisting of the virtual total loss of value to the plaintiff . . . the [defendant's] action in denying the application was a taking under the balancing test . . . ."

The fact bound determination involved in a taking issue is one particularly within the province of the trial court as finder of fact. See *Dooley* v. *Town Plan & Zoning Commission,* supra, 308–309. Where, as here, there is ample evidence supporting the trial court's careful and considered weighing of the issues, the trial court's decision must stand. *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra; see also *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 551, 552 A.2d 796 (1989).

IV

Even if we were to disagree with the trial court's conclusion that, under the balancing test, the enforcement

of the regulation constituted a taking, the trial court's judgment would nevertheless have to be upheld because the court also determined that the enforcement amounted to a practical confiscation of the property, and the defendant has not challenged this conclusion on appeal. The issue not raised is thus deemed to be abandoned. *Martin* v. *Board of Education,* 2 Conn. App. 7, 11, 475 A.2d 333 (1984). Nevertheless, because of the importance of this issue, we will briefly review the trial court's decision.

"[A]n ordinance which permanently restricts the use of property for *any* reasonable purpose goes beyond permissible regulation and amounts to . . . 'practical confiscation' . . . ." (Emphasis added.) *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 355, 362 A.2d 948 (1975); *Dooley* v. *Town Plan & Zoning Commission,* supra, 311–12. The trial court found that the only reasonable use that the plaintiff could make of his land was to build a residence. See part II, supra. The court further found that the wetlands regulations precluded the construction of the proposed 1800 square foot house even on the portion of the property farthest from the wetlands. The trial court reasonably concluded, therefore, that the regulation, as applied to this lot, restricted its use for any reasonable purpose, and thus constituted a practical confiscation.

V

The defendant's last claim is that the trial court incorrectly measured the claimed diminution in value of the plaintiff's property relative to its highest and best use, namely that of a residential building lot. The defendant, citing *Just* v. *Marinette County,* 56 Wis. 2d 7, 201 N.W.2d 761 (1972), argues that the injury to or loss of value of the property must be measured as the loss resulting from the application of the law to the prop-

erty in its natural state, not as applied to the property as the applicant might want to change it. The trial court, in this view, should have measured the value of the plaintiff's lot as it has been affected by the regulation against the value of the lot in its natural state.

We reject the defendant's .claim. The value of this property is linked to its utility as a buildable lot—that is, as a lot that may be put to reasonable use. The plaintiff purchased the property possessing that value. That value has been destroyed by the application of the regulation in question. We refuse to follow *Just* v. *Marinette County,* supra, because that case dictates that the plaintiff's loss of that value is irrelevant to the court's determination of the taking issue.

While it is true that in regulating land use under the police power, the maximum possible enrichment of a particular landowner is not a controlling purpose. *Goldblatt* v. *Hempstead,* 369 U.S. 590, 592–93, 82 S. Ct. 987, 8 L. Ed. 2d 130 (1962); *Figarsky* v. *Historic District Commission,* 171 Conn. 198, 211, 368 A.2d 163 (1976). Nonetheless, where the landowner proposes to put his property to a reasonable use, such as the construction of a single-family home in an area zoned for such use, the relevant comparison is between the property in such a buildable state and the property as regulated. See *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra, 152.

The judgment is affirmed.

In this opinion the other judges concurred.