[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the Colchester Conservation Commission (hereinafter Commission) acting in the area of inland wetlands pursuant to 22a-43 of the CT Page 8966 Connecticut General Statutes (C.G.S.), and Section 9.1.0 of the Inland Wetland Regulations for the Town and Borough of Colchester, Connecticut (hereinafter the Regulations).
At the oral argument a stipulation was filed concerning return item 29. A supplemental return item (copy of the regulations) was marked and corrections were noted on the return items nos. 32 and 37 to indicate April 7 as the correct date.
The plaintiff abandoned its claim for condemnation by letter of June 29, 1992 which has been made a part of the file. For that reason the State of Connecticut, Department of Environmental Protection did not participate in the argument.
The background facts established by the record below are not substantially in dispute.
On December 5, 1990, Pearl Epstein (hereinafter the plaintiff) applied to the Commission for a permit to cross a designated inland wetlands area of her 47-acre parcel of land located on Waterhole Road in Colchester. (Return of Record, No. 1). The Commission had jurisdiction to hear and consider all applications to conduct "regulated activities" in "inland wetlands" areas and "watercourses" within the Town of Colchester, pursuant to 22a-36 through 45 of the Connecticut General Statutes. The regulated activities proposed by the plaintiff, consisted of a road crossing and drainage discharges affecting in total approximately one-third of an acre of inland wetlands land watercourses. The Commission denied the application on April 18, 1991 after holding a public hearing on March 13, 1991 and April 10, 1991. (ROR, No. 26).
The plaintiff acquired the property by deed from Morris Epstein, Trustee dated October 24, 1972 and recorded in the Colchester Land Records. (Complaint paragraph 1).
Originally, the plaintiff's property consisted of 102.12 acres, with approximately 1,760 feet of frontage on Waterhole Road. (ROR, Nos. 5, 8). In 1975 there was a subdivision of a portion of the property (now known as Woodland Park Subdivision) leaving 86 acres of land remaining. (ROR, No. 35). Further, conveyances in 1979 and CT Page 8967 1986 resulted in the present configuration of the property which the plaintiff says is in the shape of, a bottle. A strip of land 60 feet in width and 300 feet in length connects the 47-acre parcel with Waterhole Road to its West. (ROR Nos. 32, 33, 34). This access strip contains a small brook bordered by inland wetlands soils which are traversed by an existing woods road. The plaintiff's application sought permission to improve the existing road crossing the wetlands and thus allowing access to a proposed 16-lot subdivision of the 47 acre parcel to the rear.
There was some suggestion, if it had any relevance, that by her prior sale of a part of the property the plaintiff caused her own situation. A map which is part of the record shows that a wide belt of wetlands runs adjacent to Waterhole Road over the entire frontage of the original parcel previously owned by plaintiff. (ROR No. 33). A wetlands study, conducted in 1987, suggests that the location of the presently proposed crossing would result in less wetlands encroachment than the alternative locations located over other land of the plaintiff, or previously owned by her, to the North. (ROR No. 20).
The Commission denied a permit for a subdivision road crossing over the access strip to this same property in 1989. (ROR, No. 28).
As a result of the denial, the plaintiff engaged experts to redesign the crossing. Dr. Harvey Luce, an agronomy professor at the University of Connecticut and a certified professional soil scientist with over 30 years of experience (hereinafter the scientist), reviewed the original, plans and recommended that the single culvert be replaced with 3 to 5 culverts placed in natural low spots of the wetlands area. (ROR, Nos. 14, 18). Robert Pfanner, the plaintiff's professional engineer (hereinafter the engineer), incorporated the scientist's, suggestions into the subdivision plans (ROR, No. 32), and also sought his advice with respect to the adequacy of sedimentation and erosion control measures. (ROR, No. 16). The engineer's design used one 2' x 4' box culvert and two 15" pipes to channel the existing, waterflow under the roadway, and required no easements for drainage or construction from abutting property owners. (ROR No. 26, April 10, 1991, pp. 3-8). The engineer characterized the effect on the flow of water resulting from the CT Page 8968 improvement of the roadway as "negligible," in response to a question by a Commissioner at the hearing. (ROR, Nos, 23, 26, April 10, 1991, p. 8).
The plaintiff's scientist also reconfirmed the limits of the boundaries of the inland wetland soils on the site (ROR, No. 15). He noted "[t]hat elevation of the culvert in the existing dirt road is such that the existing road acts as a dam" in his testimony at the public hearing, After explaining that "[t]he proposed street crossing which would replace the dirt road has been designated in such a manner so that the ponding of water on the up stream side of the road can be eliminated," he stated that in his opinion
 "The indirect negative effects of the road construction will be minimal, if not trivial. Construction of a street with properly placed multiple culverts will result in an improvement in the wetlands on the south side of the road."
(ROR, No. 24, p. 4). The plaintiff's scientist also testified that the Commission should consider the plaintiff's plan to donate a 15-acre wetland area in the proposed subdivision to the State of Connecticut in connection with the application to be a significant environmental benefit. (ROR, Nos. 21, 24 at p. 6).
The effect of the proposal on the flora and fauna was examined by Dr. Priscilla W. Baillie, who has degrees in biology and zoology and a Ph.D in botany. (ROR, Nos. 19, 25). Dr. Baillie, who appeared for the plaintiff, testified that she did not anticipate any adverse impacts on the wetlands from the drainage swales or from the runoff proposed. (ROR, No. 25, p. 13). With respect to the environmental impact of the construction of the subdivision road, the plaintiff points out, her testimony was that:
 "The main regulated activity in the project is the wetland crossing at the entrance to the property. However, because of the limited right of way, there is no alternative means of access. Furthermore, the plan takes advantage of an existing crossing. Vegetation along CT Page 8969 the dirt road indicated that the soil has already been disturbed. There are, at present, areas where water accumulates, along the side of the road. Drainage will be improved by the road reconstruction, and the wetland may actually benefit from, a more natural drainage pattern."
(ROR, No. 25, pp. 13-14).
Two letters from the Natural Resources Center of the State of Connecticut Department of Environmental Protection indicated that there are no known extant populations of Connecticut "Species of Special Concern" or federal "Endangered and Threatened Species," occurring on this property. (ROR, Nos. 11, 12).
The record includes items showing that the Town of Colchester's newly appointed Professional Engineer, Salvatore A. Tassone, reviewed the project numerous times in response to the request of the Commission, the plaintiff, and abutting property owners. (ROR, Nos. 2, 3, 4, 28). The Town Engineer at first noted 24 deficiencies with the plans, and communicated his opinion to the Commission in a memorandum dated January 8, 1991. (ROR, No. 2). In a subsequent memorandum dated March 12, 1991, after continued work by the plaintiff, Mr. Tassone noted only eight deficiencies remaining. (ROR, No. 3). Following four months of work by the plaintiff's experts and some design modifications, even the Commission admits that Mr. Tassone indicated on April 9, 1991, the day before the public hearing, that all of his concerns about this application had been addressed. (ROR, No. 4) (Defendant's Brief, p. 4).
The complaints about the proposal to be found in the Record are limited to the testimony and letters of the abutting property owners and their consulting engineer. The neighbor's abutting the proposed road, Joseph DeFrancesco and his wife, Jodi Rae Baer, testified at length in opposition to the project. Their engineer, W. Donald Holmes, also testified in opposition, but he did not have the final plans to review prior to the hearing because the last revision in response to the Town Engineer's concerns was submitted and accepted by the Commission just a few days prior to the CT Page 8970 hearing. (ROR, No. 29). The plaintiff claims the record copy of his comments indicates that they were scrutinized by the Town Engineer and addressed by the applicant. (Plaintiff's Brief, p. 7).
On April 18, 1991, the Commission voted to deny the permit, based on the density of development and concern over its impact on the neighbor's property. (ROR, No. 26, April 18, 1991, pp. 2, 3).
The defendant Commission relied on three reasons for denial: (1) a more desirable alternative location for the subdivision road crossing existed which the plaintiff voluntarily relinquished by earlier conveyances; (2) the development of the, 47-acre parcel utilizing the existing roadway constituted a realistic alternative to the proposed regulated activity; and (3) construction of the proposed road would adversely impact adjacent wetland areas.
The plaintiff claims that these reasons are not; supported by substantial evidence in the record. Moreover, the plaintiff argues that the denial could not have been reached without violating the rule set out in Tanner v. Conservation Commission, 15 Conn. App. 336 (1988). That rule, the plaintiff claims, requires that the Commission must not disregard the only expert witness available on a technical issue when the members lack their own expertise or knowledge. (Plaintiff's Brief, p. 17).
The defendant has argued that there is substantial evidence in the record to support the reasons given by the Commission for their denial. Also, the defendant Commission argues that the facts in this case are different from the Tanner case in that there was testimony from an expert in opposition at this hearing.
At the hearing on August 21, 1992, the plaintiff, Pearl Epstein, testified with regard to aggrievement. Her deed to the property was introduced as Plaintiff's Exhibit 1. She testified that her application was denied. The Commission offers no objection to a finding of aggrievement. The court, based upon the evidence presented, finds that the plaintiff is aggrieved and has standing to pursue instant appeal.
CT Page 8971 It is clear, that when the Commission has stated he reasons for its decision on the record, this court is required to review the reasons stated and not to search the record to determine whether there may be other grounds for a denial. DeMaria v. Planning Zoning Commission, 159 Conn. 534, (1970); Manor Development Corp. v. The Simsbury Conservation Commission, 180 Conn. 692 (1980).
Where the permit is denied it is sufficient if any one of the reasons given supports the agencies action. Frito-Lay, Inc. v. The Planning Zoning Commission, 206 Conn. 554,576 (1988); Torsiello v. Zoning Board of Appeals,3 Conn. App. 47, 50 (1984).
It is well settled that the standard of review limits the court to determine whether there has been substantial evidence which reasonably supports the administrative decision. Feinson v. Conservation Commission,180 Conn. 421, 425, (1980). Where the record, provides substantial evidence for the consideration of the Commission, the court is not permitted to substitute its judgment for that of the Commission when it is acting within the; prescribed legislative powers. Frito-Lay, Inc. v. Planning 
Zoning Commission, 206 Conn. 554, 572-573 (1988); New Haven v. Freedom of Information Commission, 205 Conn. 767, 773
(1988). The reviewing court does not try the matter de novo and cannot substitute its judgment for that of the agency. Deby [Denby] v. Commissioners, 6 Conn. App. 47, 52 (1986). Witnesses' credibility and the determination of issues of fact are areas within the province of the administrative agency. Hospital of St. Raphael's v. Commission on Hospital and Health Care, 182 Conn. 314, 318 (1980). Under the standards established for review, the question is not whether the trial court would have reached the same conclusion as the, administrative agency, but whether the record before the Commission supports the action which was taken. Altholtz v. Dental Commission, 4 Conn. App. 307, 310 (1985); Norwich v. Norwich Firefighters, 173 Conn. 210, 214 (1977).
Based upon that standard of review the court finds that there is substantial evidence to support the third reason given for the decision, namely, that the construction of the proposed road would adversely impact the adjacent wetlands.
CT Page 8972 In this connection the plaintiff claims that there was no evidence opposing the plaintiff's team of experts, primarily because of their claim that the neighbors did not have any expertise and their engineer reviewed an earlier plan and was not up to date in his analysis.
The neighbors were represented by an attorney who made a presentation at the public hearing. In addition, one of the neighbors also testified and they brought with them Mr. Donald Holmes, a licensed professional engineer in the State of Connecticut, who testified as to his considerable experience relating to subdivision design and land use planning. Mr. Holmes, in providing testimony concerning the proposal, was questioned by members of the Commission at the public hearing. The most recent plan, upon which the plaintiff's application was made, was available at that public hearing.
One of the neighbors, Ms. Baer, gave considerable credentials and while no rulings were made at the hearing with regard to her "expert status," it appears to the court that a person having a degree in biology and having previously been employed with the Pennsylvania Department of Environmental Resources as a Park Naturalist, and thereafter having been employed by the Pennsylvania Department of Agriculture as a Laboratory Technician in the Plant Pathology Laboratory could be found to be a person providing information which could be used by the, Commission to analyze these soil impact and wetlands questions.
It is the presence of Mr. Holmes and Ms. Baers that distinguishes this case from the Tanner case relied upon by the plaintiff.
This is not a case where there was complete absence of contradictory expert testimony. It is true, as the plaintiff emphasizes, that the Town Engineer had no objection to the plan as finally presented, and had raised numerous objections which were all satisfactorily addressed. However, such a circumstance does not necessarily, as a matter of law, entitle the plaintiff to a permit or require the commission to approve the application. Otherwise the law would give the Town Engineer the decision to grant or deny a permit.
Using the standards outlined above, and after CT Page 8973 giving full consideration to the excellent presentations by the attorneys in this case, the court has come to the conclusion that there is substantial evidence to support the third reason for the denial by the commission of the plaintiff's application and that the Tanner rule does not apply.
For the above reasons the appeal is dismissed.
LEUBA, J.