[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 9448
The plaintiff, Stuart A. Herman, appeals, pursuant to General Statutes, Sec. 22a-43, from the defendant, Redding Conservation Commission's denial of Herman's application for a permit which would allow him to develop a parcel of vacant land located in the Town of Redding.
Stuart Herman is the owner of a 42.748 acre parcel of land in Redding, Connecticut ("property"), which he planned to subdivide and develop, creating 13 building lots. (Return of Record ("ROR"), Item 81: subdivision map; Plaintiff's Revised Complaint, par. 1.) The parcel includes several areas designated as wetlands. (ROR, Item 26: City, Town and Regional Planning Report, pp. 1-2.) The parcel is situated adjacent to land dedicated as open space pursuant to the Town of Redding's open space plan. (ROR, Item 148: public hearing transcript, May 4, 1993, pp. 32-33.) On or about January 7, 1993, the plaintiff submitted an inland wetlands and watercourses application to the Redding Conservation Commission ("Commission"). (ROR, Item 2: Inland Wetlands and Watercourses Application Form, p. 1, Item 3: Attachment to Application Form, p. 1.) The application identifies several regulated activities, including the construction of driveways and septic systems near wetlands, and the construction of a public road over a portion of the wetlands. (ROR, Item 3, p. 1.)
On January 24, 1993, three members of the Conservation Commission, along with Barbara Herman (the plaintiff's spouse); James MacBroom (an engineer); and Barbara Obeda (an environmental consultant for the Commission) conducted an on-site inspection of the parcel. (ROR, Item 5: minutes of site inspection, p. 1.) In addition, the Return of Record is replete with documentation attesting to the Commission's inspection and evaluation of the plans relating to the development of the parcel. (See, e.g., ROR Items 5: minutes of site inspection, Items 4, 6, 7, 9, 12, 16-19: minutes of Commission meetings.) The Commission had at its disposal numerous reports and correspondence generated by various engineers and environmental consultants (see, e.g., ROR, Items 25-28, 32-34, 37-38, 42-44, 46-47, 51-52); and copies of the relevant site plans and profiles relating to the development. (ROR, Items 81-94.) In evaluating the site plans and reports, the Commission discussed alternative uses of the land which would CT Page 9449 avoid the need to construct a public road, but would also reduce the number of lots available for development. (ROR, Item 151: transcript of June 1, 1993 public hearing; Item 152: transcript of June 15, 1993 Commission meeting.)
On July 6, 1994, the Commission met for the purpose of, among other things, voting upon the plaintiff's application. (ROR, Item 19: minutes of Commission meeting of July 6, 1993.) At that meeting, Commissioner Samuel E. Hill read his lengthy motion to deny the plaintiff's application. (ROR, Items 19, 24: letter of denial of application.) The motion recites provisions of the Town of Redding's Wetlands and Watercourses Regulations and identifies specific reports and/or portions thereof which Hill cites as the considerations upon which he based his motion to deny the plaintiff's application. (ROR, Item 24, pp. 3-9.) Among those considerations, Hill identifies both wetlands concerns and open space concerns. (ROR, Item 24, pp. 3-9.) Commissioner DeMasi seconded the motion, also citing wetlands concerns and open space concerns as his reasons for doing so. (ROR, Item 153: transcript of Commission meeting of July 6, 1993, p. 2.) Those present at the meeting, Chairman Pattee and Commissioners Hill, Rolnick, DeMasi and Jaslow, voted unanimously to deny the application. (ROR, Item 153.) Notice of the application denial was published in the Redding Pilot on July 15, 1993. (ROR, Item 21: certification of publication.)
On July 30, 1993, the plaintiff commenced the present action appealing the Commission's denial of his application, and naming as defendants the Redding Conservation Commission and Timothy Keeney, the Commissioner of Environmental Protection for the State of Connecticut. (Complaint, dated July 29, 1993.) On April 7, 1994, the plaintiff filed a revised complaint alleging six general theories as to why the Commission's denial of the plaintiff's application was invalid. (Revised Complaint, par. 29.) First, the plaintiff alleges that the Commission's denial was arbitrary, capricious and an abuse of discretion because (1) "the commission failed to state any basis or reason for its decision on the record as required by Section 6.2 of the Regulations"; (2) the Commission "failed to evaluate the environmental impact of the proposed activity as required by Section 7.1 of the Regulations"; (3) in its denial of the plaintiff's application, the Commission "failed to apply the criteria set forth in Section 7.2 of the regulations"; (4) the Commission "failed to consider any of [the parameters set forth in Section 7.3 of the regulations as they applied to the CT Page 9450 proposal"; and (5) the Commission "failed to consider the finding of no adverse impact by the Bridgeport Hydraulic Company as required by Section 7.4.e of the Regulations . . . ." (Revised Complaint, par. 29.) Second, the plaintiff alleges that "the regulations which the commission sought to enforce were beyond the scope of the Inland Wetlands and Watercourses Act and not in conformity with the act or the Regulations promulgated by the Commissioner of Environmental Protection pursuant thereto. . ." because: (1) "the last sentence of Section 7.2.e of the Regulations purports to give the Commission the right to consider whether the subdivision is compatible `with the objectives of the Town Open Space Plan' in addition to and independent of the environmental impact of the proposed subdivision"; and (2) "Section 7.6 of the regulations requires the Commission to find that each regulated activity in and of itself, meets each of the reasons given in Section 22a-36 Conn. Gen. Stat. to justify passage by the Connecticut General Assembly of an act regulating the use of inland wetlands and watercourses throughout the entire State, a logical impossibility when applied to each regulated activity." (Revised Complaint, par. 29.) Third, the plaintiff alleges that "[t]he commission failed to give consideration to the total lack of a feasible and prudent alternative. Substituting a driveway for a road does not provide a reasonable and prudent alternative use for the plaintiff's property." (Revised Complaint, par. 29.) Fourth, the plaintiff alleges that "the denial by the commission is tantamount to a taking of the plaintiff's property without compensation and without due process of law." (Revised Complaint, par. 29.) Fifth, the plaintiff alleges that "[t]he Commission members were predisposed to denying the application, and the plaintiff was therefore not given a full and fair hearing on the application." (Revised Complaint, par. 29.) Sixth, the plaintiff alleges that "Commissioner Samuel Hill had such a personal interest in the question of open space that he should have voluntarily disqualified himself from any consideration of the plaintiff's application and his failure to do so invalidates the action of the Commission." In light of these allegations, the plaintiff seeks one or more of the following: "1. An order reversing the action of the Commission. 2. An order directing the Commission to approve the application as modified through the end of the public hearing. 3. A finding pursuant to [General Statutes § 22a-43a] . . . that the action appealed from constitutes the equivalent of a taking without compensation and a subsequent order modifying the action so that it does not constitute a taking with a remand to the Commission for action not CT Page 9451 inconsistent with the court decision. 4. Costs and fees. 5. Such other and further relief at law or in equity which this court deems appropriate." (Revised Complaint, pp. 11-12.)
On August 10, 1994, the plaintiff filed a preliminary brief in support of his appeal. On October 4, 1994, the defendant, Commissioner of Environmental Protection, filed his brief in opposition to the plaintiff's appeal, and on November 4, the defendant, Conservation Commission, filed its brief in opposition to the plaintiff's appeal. The court held hearings with respect to the appeal on April 3, 1995 and April 24, 1995.
AGGRIEVEMENT
General Statutes, Sec. 22a-43 sets forth the requirements for aggrievement in inland wetlands appeals. Aggrievement is a jurisdictional question. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991). "Aggrievement is a question of fact for the trial court and the plaintiff has the burden of proving that fact." New EnglandRehabilitation Hospital, Inc. v. Commission on Hospitals andHealth Care, 226 Conn. 105, 120 627 A.2d 1257 (1993). "In the absence of aggrievement, an administrative appeal must be dismissed for lack of subject matter jurisdiction." Id., 121. The owner of the property that is the subject of a denied application is aggrieved. Bossert Corporation v. Norwalk, 157 Conn. 279, 285,253 A.2d 39 (1968); see Winchester Woods Associates v. Planning Zoning Commission, supra, 219 Conn. 308; Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530, 525 A.2d 940 (1987). At the April 3, 1995 hearing, the court found that the plaintiff is aggrieved and is therefore entitled to bring this appeal.
TIMELINESS
General Statutes, Sec. 22a-43(a) states, in pertinent part, that "any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality . . . may, within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located. . . . Notice of such appeal shall be served upon the inland wetlands agency and the commissioner." General Statutes, Sec. 8-8(b) states that an appeal is commenced by "service of process in accordance with subsection (e) and (f) of CT Page 9452 this section within fifteen days from the date that notice of the decision was published. . . ." Section 8-8(e) provides that service of process "shall be made by leaving a true and attested copy of the process with, or at the usual place or abode of, the chairman or clerk of the board and by leaving a true and attested copy with the clerk of the municipality."
On July 15, 1993, the Commission published notice of its denial of the plaintiff's application in the Redding Pilot. On July 30, 1993, the plaintiff served the defendants by leaving a true and attested copy of the original citation, recognizance and complaint in the hands of the clerk of the Commission, Carol Keil; the Redding Town Clerk, Patricia A. Creigh; and the Commissioner of Environmental Protection of the State of Connecticut, Timothy Keeney, and by leaving a true and attested copy of the original citation, recognizance and complaint at the usual place of abode of the chairman of the Commission, David Pattee. (Sheriff's return.) The appeal was served within the requisite fifteen days and is, therefore, timely.
SCOPE OF REVIEW
"The plaintiff's burden, in challenging the action of the [inland wetlands] agency in denying [an] application is to show that the agency acted arbitrarily, illegally or that the decision is not reasonably supported by the evidence." Madrid Corporationv. Inland Wetlands Agency, 25 Conn. App. 446, 449, 594 A.2d 1037, cert. denied, 220 Conn. 915, 597 A.2d 334 (1991); see also RedHill Coalition v. Conservation Commission, 212 Conn. 710, 718,563 A.2d 1339 (1989). In reviewing an administrative agency's decision, the trial court may not substitute its judgment for that of the administrative tribunal. Frito-Lay Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988). The review of a decision of an inland wetlands commission is limited to the record. Gagnon v. Inland Wetlands WatercoursesCommission, 213 Conn. 604, 609, 596 A.2d 1094 (1990). "In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue CT Page 9453 can be reasonably inferred. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks omitted.) Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587-88, 628 A.2d 1286 (1994).
"In adhering to this `substantial evidence' standard for an inland wetlands agency appeal, we have held that it is improper for the reviewing court to reverse an agency decision simply because an agency failed to state its reason for its decision on the record. The reviewing court instead must search the record of the hearings before that Commission to determine if there is an adequate basis for its decision." (Internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, supra, 226 Conn. 588-89.
ARGUMENTS
In his brief, the plaintiff advances the following arguments:
(1) The Commissions's denial of the plaintiff's application constitutes a taking pursuant to the constitutions of the United States and the State of Connecticut.
(2) The motion for denial of the plaintiff's application contains no valid findings or reasons that justify the denial.
(3) Commissioners Hill and DeMasi's citations of open space concerns in the motion for denial and the second of that motion were improper.
The plaintiff has not briefed or argued the other claims alleged in his complaint. Therefore, the court treats those claims as having been abandoned. See Fromer v. Freedom ofInformation Commission, 36 Conn. App. 155, 156, ___ A.2d ___ (1994).
In its brief, the defendant Commission argues that the denial of the plaintiff's application does not constitute a taking because: (1) the denial is not vested with the necessary finality to constitute a taking; and (2) the plaintiff's development expectations were not reasonable. The Commission further argues that substantial evidence exists in the record to support the Commission's denial of the plaintiff's application pursuant to CT Page 9454 the town's inland wetlands regulations and, therefore, that the plaintiff's appeal must be dismissed. The Commission contends that its discussion of open space issues does not invalidate its decision as an inland wetlands agency. The Commission also contends that the plaintiff's request for an order from the court directing the Commission to grant the plaintiff's application is unwarranted.
In its brief, the Commissioner of Environmental Protection argues with respect to the plaintiff's takings claim that (1) the plaintiff has failed to establish the finality of the Commission's decision; and (2) the plaintiff failed to demonstrate that the decision deprived him of all economically viable use of the property. In addition, the Commissioner argues that if the court sustains the plaintiff's appeal, the matter should be remanded to the Commission for further action.
QUESTIONS TO BE ADDRESSED BY THE COURT
1. Does the Commission's denial of the plaintiff's application constitute a taking in violation of the state or federal constitutions?
The plaintiff argues that the Commission's denial of his application constitutes a regulatory taking in violation of the state and federal constitutions. In response, the Commission and the Commissioner of Environmental Protection argue that the plaintiff has failed to demonstrate that the Commission's denial of his application constitutes a final deprivation of the reasonable and proper use of the plaintiff's property and, therefore, that the plaintiff is not now entitled to judicial review of his takings claim.
"Until it appears that the . . . [plaintiff has] been finally deprived of the reasonable and proper use of the property, it cannot be said that there has been an unconstitutional taking of property without just compensation." (Internal quotation marks omitted.) Smith v. Zoning Board of Appeals, 227 Conn. 71, 100,629 A.2d 1089 (1993). "[A] final deprivation has occurred when there [are] no economically viable uses of the land or there has been practical confiscation of the entire property." Id. "The plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination. Gil v.Inland Wetlands Watercourses Agency, 219 Conn. 404, 415, CT Page 9455593 A.2d 1368 (1991). "To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property." (Emphasis in original.) Id. "[I]n most cases, a property owner must do more than submit one plan to an agency in order to establish that the agency's decision is `final' for the purposes of the takings clause." (Internal quotation marks omitted.) Id., 417. Furthermore "rejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews." Id.
It would appear that the fundamental premise of the plaintiff's takings claim is that the only reasonable way to develop the property would involve the construction of a town road such as that proposed in his application. Such a road would allow for the development of approximately 12 lots on the property. The plaintiff contends that the "the taking claim is ripe for decision because the Commission itself stated what it considered to be a `feasible and prudent' alternative, i.e. a 4 lot subdivision instead of a 12 lot subdivision."[1]
(Plaintiff's Brief, p. 21.) The plaintiff, citing Samperi v.Inland Wetlands Agency, supra, 226 Conn. 579, 595, 628 A.2d 1286
(1993), states further that a reduction in the number of lots from 12 to 4 "is not a `feasible and prudent alternative'; it is a taking. It is not `economically reasonable.'" (Plaintiff's Brief, p. 31). In short, the plaintiff contends that the Commission's determination that a less ambitious development alternative than that proposed in the plaintiff's application would be "feasible and prudent," constitutes a final rejection of the only reasonable development plan — the plan proposed in the plaintiff's application.
The court finds that the plaintiff's contention that the Commission's decision constitutes a final deprivation is without merit. As discussed below, the commission's objections to the proposed road do not mandate the conclusion that no reasonable alternative use of the property would be approved by the commission.
In Gil v. Inland Wetlands Watercourses Agency, supra,219 Conn. 416, the defendant, Inland Wetlands Watercourses Agency, denied four successive applications (three on their merits) for a permit to build a home on the applicant's property. The applicant appealed the fourth denial to the Superior Court which sustained CT Page 9456 the appeal on the ground that the denial constituted an unconstitutional taking. Id., 405. The Appellate Court affirmed the judgment of the Superior Court. Gil v. Inland Wetlands Watercourses Agency, 23 Conn. App. 379, 580 A.2d 539 (1990). The Supreme Court, however, held that the plaintiff had not demonstrated the necessary finality to support a takings claim and remanded the case to the trial court with instructions to render judgment for the agency. Gil v. Inland Wetlands Watercourses Agency, supra, 219 Conn. 417. In reaching this conclusion, the court emphasized that although "the plaintiff has a reasonable expectation of developing the property for residential purposes, the wetlands status of a portion of the property should also have warned the plaintiff that development would be difficult and that repeated applications might be necessary before the agency would approve an application for a building permit." Id. 416. In its discussion of the finality issue, the court noted that each of the applications denied by the agency proposed the construction of a single family house with a footprint of over 1500 square feet. Id., 416. In holding that the plaintiff had failed to demonstrate the finality necessary to sustain a takings claim, the court stated "we cannot say that the agency would have rejected a more modest proposal if one had been offered by the plaintiff." Id., 417. In Smith v.Zoning Board of Appeals, supra, 227 Conn. 99, the plaintiffs argued, in part, that the denial by the defendant of the plaintiff's subdivision application constituted a taking. In that case, the plaintiff appealed from a decision by the Greenwich Zoning Board of Appeals denying the plaintiff's application to subdivide his property into three lots. The application in which the plaintiff proposed building a residence on an unimproved lot was denied in part because any proposed building on that lot would disrupt "the essential characteristic of the historical district" in which the property was located. Id., 76. In its discussion of the finality aspect of the plaintiff's takings claim, the court noted that "the board found . . . that other viable options [existed] for the development of the plaintiff's property." Id., 100. The court held that "[t]he board's rejection of the plaintiff's subdivision application does not lead to the conclusion that other plans will be denied as well. . . . Until it appears that the plaintiffs have been finally deprived of the reasonable and proper use of the property, it cannot be said that there has been an unconstitutional taking . . . ." (Internal quotation marks omitted.) Id.
The present case is similar to both of the above cited cases CT Page 9457 in that alternative development options may exist for the plaintiff's property for which applications have not been submitted. One such alternative, involving access to the property via a private road instead of a town road, was discussed in a favorable light by the Commission at its public hearing on June 1, 1993 (ROR, Item 151, pp. 4-5); and at its meeting of June 15, 1994 (ROR, Item 152, pp. 2-5.m). The court finds that these discussions suggest the Commission's receptivity to consideration of alternative development schemes.
Although the plaintiff argues in his memorandum of law that the alternative discussed by the Commission is not economically viable, the court finds that the assertion has no foundation in the record. Until the plaintiff submits alternative applications to the Commission exploring every reasonable option for developing the property, and those applications are denied, the plaintiff cannot establish that the defendants' decision is vested with the requisite finality to sustain the plaintiff's takings claim.
Accordingly, the plaintiff is not now entitled to judicial review of the merits of his takings claim. Gil v. Inland Wetlands Watercourses Agency, supra, 219 Conn. 415.
2. Does substantial evidence exist in the record to support the Commission's denial of the plaintiff's application?
The plaintiff's second ground for appeal is that Commissioner Hill's motion for denial contains no valid findings or reasons that support the denial. The plaintiff argues that the failure to state such reasons constitutes a violation of General Statutes, Sec. 22a-42a(d).[2] The Commission argues that the motion to deny the application included findings that the proposed development plan violated the town's inland wetlands regulations.
The court finds that the Commission complied with Sec. 22a-42a(d) by providing valid reasons for its decision in accordance with the criteria set forth in the town's Inland Wetlands and Watercourses Regulations.[3] Those reasons were adopted by the Commission when the motion to deny the application carried unanimously at the Commission's July 6, 1993 meeting. (ROR, Item 19.) See Ruotolo v. Inland Wetlands Agency, 18 Conn. App. 440,449, 558 A.2d 1021 (1989) (holding that a motion for denial of an application, containing a reason for the denial, satisfied the requirement that the defendant agency state the reasons for its CT Page 9458 decision on the record, when the motion carried and the information was included in a letter to the plaintiff). The text of the motion was attached to the denial letter sent to the plaintiff dated July 19, 1993. (ROR, Item 24.) "When the Commission has stated the reasons for its decision on the record, this court is required to review the reasons stated and not to search the record to determine whether there may be other grounds for a denial." Epstein v. Colchester Conservation Commission,7 CSCR 1166 (September 23, 1992, Leuba, J.); see DeMaria v.Planning Zoning Commission, 159 Conn. 534, 540, 271 A.2d 105
(1970).
The motion to deny the plaintiff's application contains excerpts from reports prepared by Barbara Obeda, an environmental consultant to the Commission; and John Hayes, a consultant to the Redding Planning Commission, both of which provide ample criticism of the proposed development scheme to justify denial of the plaintiff's application.[4] (ROR, Item 23.) For instance, the report prepared by John Hayes states that "the wetland crossings should be redesigned for less filled area and reduced environmental impact." (ROR, Item 24.) In his report, Mr. Hayes also expresses concerns about (1) the absence of oil traps at several discharges to streams; (2) the "possible interception of groundwater due to driveway and swale cuts, and the possible chemical ice control on this northwesterly slope" which result in "the potential for gully erosion and salt discharge above the Little River. . ."; (3) a lack of siltation control; and (4) accommodations for driveway runoff. (ROR, Item 74, pp. 2-4.)
In his memorandum, the plaintiff takes issue with most of the concerns expressed in Hayes' report. For instance, the plaintiff claims that (1) the absence of oil traps could have been imposed as a condition of approval; (2) the runoff mentioned by Hayes will be driveway runoff not road runoff, and that any chemical ice control will be minimal; (3) the plans do not purport to show all of the required siltation control fencing; (4) the driveway runoff concerns were not advanced in good faith by Hayes.
The report prepared by Barbara Obeda, quoted in the motion to deny the plaintiff's application, identifies additional concerns upon which the Commission relied. Specifically, Obeda's report states that "two-hundred feet of stream channel will be permanently modified" and that "none of the stream bed flora or fauna will survive." (ROR, Item 68, p. 1.) The report further notes that the fill proposed for the roadway will destroy CT Page 9459 additional wetlands, that roadway drainage will carry oil and sand pollutants into the watercourse and that damage to the wetlands will have an adverse impact on surrounding habitat for wildlife and the ecological balance of the entire area. (ROR, Item 68 pp. 1-2.) The court finds that many of these concerns represent legitimate reasons for denial of the plaintiff's application pursuant to Secs. 7.1, 7.2 and 7.3 of the town's Inland Wetlands and Watercourses Regulations.
The plaintiff contends, that Obeda's concern about the fact that 200 feet of stream bed will be permanently altered, killing flora and fauna, and that surrounding wetlands will be destroyed by fill do not constitute valid reasons for denial because the consequences described by Obeda are the inevitable results of the activities in which the plaintiff seeks permission to engage.[5] The plaintiff argues further that Obeda's report ignores the presence of an oil trap catch basin which, the plaintiff contends, will prevent oil from contaminating the watercourse. (The plaintiff makes no mention of the fine sediments, cited as pollutants by Obeda.) Any pollutants not contained by the oil trap catch basin, the plaintiff contends, will be minimal as they will be the product of only 500 feet of uncurbed road. Lastly, the plaintiff contends that the concerns for wildlife habitat and populations in the area surrounding the wetlands is not within the jurisdiction of the Commission and hence not a proper reason for denial.
The motion to deny the plaintiff's application also contains references to numerous other reports and correspondence ("reports") prepared by Hayes, Obeda, James MacBroom, P.E., and Roy Bradshaw, Redding Health Officer. Those reports contain concerns regarding the impact that the activity proposed by the plaintiff would have upon the affected wetlands.[6] The plaintiff argues that, with the exception of two of those reports, the plaintiff had responded to all of the concerns raised by those reports. The plaintiff also argues that some of the reports are obsolete because they refer to earlier versions of the plans for developing the property. Neither the plaintiff, nor the defendant, however, has briefed the court on the specific findings of those reports or the plaintiff's corresponding responses. Therefore, the court need not engage in a detailed discussion of those reports nor the plaintiff's responses. Nevertheless, the cited reports do articulate concerns regarding the effect the activity proposed in the plaintiff's application will have on subject wetlands. The plaintiff's responses to those CT Page 9460 reports, though not specifically identified by the plaintiff in his brief, afford contrary evidence intended to refute the concerns raised by the reports. (See, e.g., ROR, Items 69, 70, 71, 75.)
At the public hearings held with respect to the plaintiff's application, the Commission heard testimony both in favor of granting the plaintiff's application and in favor of denying the application. That testimony was provided by Obeda; MacBroom; Dick Linartz, a professional engineer with the firm of Vollmer Associates; Russ Slayback, a geologist with the firm of Leggette, Brashears and Graham; Dave Bartlett, an environmental scientist with Vollmer Associates; and several Redding residents affected by the development. (ROR, Items 147-151.) Though that testimony was not cited by Commissioner Hill in his motion to deny the plaintiff's application, the testimony does concern the impact on wetlands that would result from the development of the property as proposed by the plaintiff in his application.
It is the agency's function to weigh the credibility of witnesses and resolve questions of fact where they arise. Huck v.Inland Wetlands Watercourses Agency, supra, 203 Conn. 540-41. Moreover, "an administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it. . . ." Id., 542. By refuting the Commission's reasons for denying his application, the plaintiff has merely suggested how the Commission might reasonably have settled upon a different result. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." (Internal quotation marks omitted.) Samperi v. Inland Wetlands Agency,
supra, 226 Conn. 588.
The court finds that the Hayes and Obeda reports, as quoted in Commissioner Hill's motion for denial, in addition to the numerous other cited reports, contain numerous wetlands concerns which properly constitute reasons for the denial of the plaintiff's application pursuant to Secs. 7.1, 7.2 and 7.3 of the town's Inland Wetlands and Watercourses Regulations and General Statutes, Sec. 22a-42a(d). The court further finds that the Commission was within its discretion to draw the conclusions it drew from the contradictory evidence before it. Accordingly, the plaintiff's appeal should not be sustained on the ground that the Commission failed to state reasons for its decision. CT Page 9461
3. Did the Commission's consideration of open space concerns invalidates the Commission's denial of the plaintiff's application.
The third ground for appeal advanced by the plaintiff is that the Commission's citation of open space concerns in the motion to deny the application, and the second of that motion are improper because consideration of open space concerns falls outside of the statutory scope of the Commission's authority. The Commission argues that it considered open space issues, with respect to the plaintiff's application, only in its capacity as the Redding Conservation Commission, not in its separate capacity as the Inland Wetlands Agency. The Commission argues that such consideration is authorized by General Statutes, Secs. 7-131a(b) and 4.6.5 of the Town of Redding's Subdivision Regulations.
The court finds that Commissioner Hill's citation of open space concerns in his denial of the proposed application was not, as the Commission argues, an open space recommendation made in a capacity separate from the Commission's function as the town's Inland Wetlands Agency. Rather, the transcript of the Commission's June 15, 1993 meeting reveals that the Commission felt it was within its authority pursuant to Sec. 7.2(e) of the Inland Wetlands and Watercourses Regulations to base part of its decision to approve or deny the plaintiff's application on open space concerns.[7] (ROR, Item 79, p. 16; ROR, Item 152, pp. 11-12.) Nevertheless, where, as in the present case, several reasons for an agency's decision are advanced, "[t]he agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Huck v.Inland Wetlands Watercourses Agency, supra, 203 Conn. 540. The court has already determined that ample evidence exists to support the reasons for the denial advanced by the Commission that were decided within the scope of the Commission's jurisdiction. Therefore, the Commission's consideration of open space concerns is not a ground upon which the court may sustain the plaintiff's appeal.
CONCLUSION
The Commission's decision does not constitute a final deprivation of the plaintiff's property and, therefore, the plaintiff's takings claim is not now ripe for decision. The Commission, within its jurisdiction, has articulated sufficient CT Page 9462 reasons to support its decision to deny the plaintiff's application.
Accordingly, the plaintiff's appeal is dismissed.
Riefberg, J.